Pratibha JOSHI, Plaintiff,

v.

**PROFESSIONAL HEALTH SERVICES, INC., Celeste Szewczyk, Martha Gramlich, and Greater Southeast Community Hospital, Defendants.**

Civ. A. Nos. CA 83–1073, 83–1074 and 83–1075.

United States District Court, District of Columbia.

March 25, 1985.

Michael Schwartz, Baltimore, Md., for plaintiff.

Mary Lou Mayers, Washington, D.C., for Greater Southeast Community Hospital.

Charles E. Gallagher, Upper Marlboro, Md., for Prof. Health Services.

Robert G. Brewer, Jr., Bethesda, Md., for Celeste Szewczyk.

John B. Williams, Washington, D.C., for Martha Gramlich.

## MEMORANDUM OPINION
## AND ORDER

STANLEY S. HARRIS, District Judge.

These three consolidated cases involve claims of discrimination and retaliation against Pratibha Joshi, M.D., who is a United States citizen of East Indian extraction, having her national origin in India, and belonging to the Asian-Pacific Islander minority classification. Dr. Joshi contends that she was discriminated against because of her race and color and retaliated against because she sought relief from the Equal Employment Opportunity Commission in 1980.

The stage may be set briefly. As its name indicates, defendant Greater Southeast Community Hospital is a general hospital in the District of Columbia. It has a very active emergency room. When the events involved here began, the emergency room physicians there were not employed by the hospital. Instead, the emergency room physicians were employed by defendant Professional Health Services, Inc. (PHS). Three of the physicians who thus were employed by PHS to work in the hospital's emergency room were the plain-

tiff Joshi and defendants Celeste Szewczyk and Martha Gramlich.

The Court turns now to an abbreviated description of the history of this litigation, which reveals its tangled and protracted procedural posture as well as the plaintiff's litigious nature.

Dr. Joshi filed her first complaints with the Equal Employment Opportunity Commission in July 1980. Numbered 033–80–2092 and 033–80–9099, those complaints asserted claims under the Equal Pay Act and sought redress of grievances allegedly arising out of the denial of promotional opportunities and harassment on the job. The filing of those complaints became the basis of a retaliation claim, the first of the cases now before this Court, Civil Action No. 83–1073. That case originally was brought as Civil Action No. K–80–2621 in the United States District Court for the District of Maryland. It was filed in October 1980, when Dr. Joshi was informed, subsequent in time to her Equal Pay Act complaints, that her employment with the defendant PHS would be terminated. She then filed her first court action alleging racial discrimination under 42 U.S.C. § 1981 and conspiracy, motivated by class-based discriminatory animus, under 42 U.S.C. § 1985(3). The named defendants were PHS, a nonprofit organization which, as noted, contracted with the Greater Southeast Community Hospital to provide medical services in the Department of Emergency Medicine from July 2, 1978, to July 1, 1981; Dr. Szewczyk, the Acting Chairman of the Department of Emergency Medicine at the hospital; and Dr. Gramlich, the Acting Vice Chairman of the Department. Following an EEOC finding of reasonable cause to believe the truth of Dr. Joshi's allegations of retaliation for the earlier complaints, the EEOC filed, in the District of Malryland, Civil Action No. K–802736 based on Title VII.

On October 16, 1980, the District Court for the District of Maryland held a non-evidentiary hearing and consolidated the cases. See Joshi v. Professional Health Services, Inc., CA No. K–80–2621 (D.Md.

Oct. 16, 1980) (Order). On October 25, 1980, the parties reached a settlement. On November 17, 1980, a consent order was entered which provided in significant part: (1) that Dr. Szewczyk and Dr. Gramlich were to be dismissed as defendants with prejudice; (2) that Dr. Joshi was to be reinstated; (3) that Dr. Joshi's personnel file was to be expunged of all material documenting complaints or incidents entered in such file subsequent to July 18, 1980; (4) that Dr. Joshi was to be awarded $9,900; and (5) that the parties were to "seek to ensure a satisfactory working relationship." See Joshi v. PHS, CA No. K–80–2621 (D.Md. Nov. 17, 1980) (Consent Order).

The contract under which Dr. Joshi resumed work after her reinstatement specified that her compensation would be $30.47 per hour and that she would work an average of 40 hours per week. Less than one year later, the hospital decided not to renew its contract with PHS and to hire its own emergency room doctors. When it decided not to employ Dr. Joshi, she filed petitions seeking to have the defendants held in contempt of court and to seize her personnel file. Concomitant with those petitions, Dr. Joshi filed two new administrative complaints with the EEOC, numbered 033–81–1671 (against PHS), and 033–81–1672 (against the hospital), alleging unlawful discrimination and retaliation for the filing of the 1980 Equal Pay Act complaints. Consideration of those new complaints resulted in EEOC determinations that there was not reasonable cause to believe that the allegations were true. The EEOC thereafter issued two right-to-sue notices.

On January 25, 1982, Dr. Joshi filed two new court actions in the District of Maryland based on the right-to-sue notices. They were Civil Action No. K–82–191 (now here as CA No. 83–1074) and Civil Action No. K–82–192 (now here as CA No. 83–1075). The named defendants were PHS, the hospital, Dr. Szewczyk, and Dr. Gramlich. In those actions, Dr. Joshi alleged violations of Title VII in retaliation for the 1980 charges she had made against PHS

and the two doctors. For relief, Dr. Joshi asked that her employment at the hospital be continued, that her personnel file be expunged, and that she be awarded $300,-000 in damages, back pay, employee benefits, attorneys' fees, and costs. Furthermore, she moved to reopen Civil Action No. K–80–2621 and to vacate the consent order.

At a hearing on the three actions on March 21, 1983, plaintiff's counsel stated that Dr. Joshi was proceeding in Civil Action No. K–82–191 and Civil Action No. K–82–192 under both Title VII and § 1981. *See* Letter from Michael Schwartz to Judge Kaufman (October 17, 1980) (adding allegation that plaintiff is a member of the brown race). Defense counsel affirmatively stated that the defendants did not oppose what Judge Kaufman understood to be an oral, on the record amendment of the complaints to add the § 1981 claim. *See Joshi v. PHS*, CA No. K–80–2621 (D.Md. Apr. 13, 1983) (Memorandum and Order transferring case at 2 n. 1). On March 29, Judge Kaufman ordered CA No. K–80–2736 (the EEOC's complaint) closed pursuant to the EEOC counsel's statement that there was no objection and that the EEOC proceedings were completed. *Id.* at 3. The court determined that disputed issues of material fact precluded summary judgment. The charges against Dr. Gramlich under Title VII in Civil Actions No. K–82–191 and K–82–192 were dismissed for lack of subject matter jurisdiction. *Id.* at 14. The court then transferred the three remaining open cases of Dr. Joshi (Nos. K–80–2621, K–82–191, and K–82–192) to the United States District Court for the District of Columbia.

Those cases now are before this court as No. 83–1073 (formerly No. K–80–2621), referred to as "the contempt proceedings" which allege violations of the consent order, and No. 83–1074 (formerly K–82–191) and No. 83–1075 (formerly K–82–192), together referred to as the Title VII actions which allege retaliation. PHS, Dr. Szewczyk, and the hospital are defendants in all three cases. Dr. Gramlich is a defendant only in No. 83–1073, the contempt proceeding. In the contempt proceeding, Dr. Joshi seeks enforcement of the consent order through reinstatement and compensation. In the Title VII actions, she seeks injunctive relief mandating the renewal of her employment as an emergency room physician at Greater Southeast Community Hospital.

It should be noted that contrary to the memorandum and order of Judge Kaufman in the District Court for the District of Maryland and the consolidated statement of the defendants pursuant to the court order of April 22, 1983, the plaintiff did not amend her complaints in Civil Actions No. 83–1074 and No. 83–1075 to allege discrimination or to allege a cause of action under 42 U.S.C. § 1981. Instead, CA No. 83–1074 is predicated on the ground of retaliation by the defendants for the plaintiff's actions in seeking to vindicate her rights against racial discrimination with the EEOC and with the court in CA No. K–80–2621. Civil Action No. 83–1075 alleges only retaliation by the hospital, aided by the other defendants, in the failure to continue the plaintiff's employment. *See* Plaintiff's memorandum in response to defendant's consolidated statement (May 25, 1983).

*The Contempt of Court Proceedings*

■ Rule 70 of the Federal Rules of Civil Procedure allows a court to adjudge a party in contempt for failure to perform a specific act as directed by a judgment. To be held in contempt, a party must have knowledge of the court's order, an ability to comply with that order, *see WMATA v. Amalgamated Transit Union*, 531 F.2d 617, 621 (D.C.Cir.1976); *Natural Resources Defense Council v. Train*, 510 F.2d 692, 713 (D.C.Cir.1975), and the party must have directly violated a specific court order. *See International Longshoremen's Association v. Philadelphia Marine Trade Association*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967).

■ Dr. Joshi claims that the defendants' failure to perform mandatory requirements of the consent order, the defendants' constant harassment of the plaintiff, and the defendant hospital's failure to hire the

plaintiff were actions in contempt of the 1980 consent order. As the defendants point out, however, none of these is a direct violation of any provision of the consent order. The consent order is drafted in such general and inexact language that the plaintiff's contentions in effect are based on violations of inferred or imaginary requirements, not specific court orders. Prohibited conduct will not be implied. *See Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir.1971). The Supreme Court has stated: "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *International Longshoremen's Association*, 389 U.S. at 76, 88 S.Ct. at 208. A penalty may not be imposed for disobeying a command that exists only in one's wishful thinking.

■ The first of the requirements which Dr. Joshi claims that the defendants did not satisfy was to "promptly" (the plaintiff's word) "execute the contract identified as Physician Contract Number 2," which Dr. Joshi states was supposed to be attached to the consent order. *See* Consent Order ¶ 3. There was no specific date by which the contract was to be executed; neither party added the word "promptly" to the order; and neither party undertook to provide for the attachment of the contract to the consent order. Therefore, there was no direct order to execute the contract promptly. The delay in signing (which, incidentally, was explained quite satisfactorily at trial) cannot be contemptuous of the order.

■ The second requirement was to pay correct wages as specified. Again, nothing in the order regarding wages makes violative or contemptuous the inadvertent incorrect payment—or even the legitimately dis-

puted underpayment—which was referred to the employer's counsel and eventually resolved.[1]

■ The final requirement said to be violated was the direction to remove negative materials from Dr. Joshi's personnel file. *See* Consent Order ¶ 6. The plaintiff has admitted that PHS expunged a personnel file as required by the consent order. That file was produced at the request of the plaintiff's attorney and contained only Dr. Joshi's resume, pay stubs, W–2 forms, and expense vouchers. At some point thereafter, another file was produced containing several documents, complaints, or accounts of incidents involving Dr. Joshi. This file, plaintiff contends, was the one referred to in the consent order. The relevant language of the consent order is as follows: "Defendant, Professional Health Services, Inc., shall remove from the personnel file of the Plaintiff, Pratibha Joshi, all material documenting complaints or incidents entered in such file subsequent to July 18, 1980." There is no exact description of any particular file; the defendants scarcely could be found in contempt for expunging the "wrong" file. An ambiguous order redounds to the benefit of the person charged with contempt. *See Ford v. Kammerer*, 450 F.2d at 280.[2]

■ The plaintiff further contends that the defendants subjected her to constant harassment in contempt of the consent order's requirement that the defendant and Dr. Joshi seek to ensure a mutually satisfactory working relationship. The incidents that the plaintiff has described range from unpleasant annoyances to unintentional and insignificant oversights. For example, Dr. Gramlich misinformed Dr. Joshi

---

1. Plaintiff contended she was underpaid $2.78 per hour from October 26, 1980, to June 3, 1981. She notified Mrs. Marian Patterson, then the President of PHS, who attempted to rectify the situation by tendering a paycheck with arrears added from January 23, 1981, the date the Physician's Agreement was signed. When Dr. Joshi again complained, the matter was referred to Mr. Koch, the hospital's counsel, and the error in payment from November 17, 1980, to January 23, 1981, was admitted. Now, only a period

of three weeks, from October 26, 1980, to November 17, 1980, apparently remains at issue.

2. There is no need to deal with the issues of whether the defendants Gramlich or Szewczyk had the authority to expunge the file or whether they or the hospital had knowledge of the requirement to do so since the entire issue of the file is resolved on the ambiguity of the consent order's provisions.

about her entitlement to bereavement leave following her father's death. Only two days later, Dr. Gramlich rectified this error in a letter making clear Dr. Joshi's entitlement and apologizing for the mistake. Other incidents included Dr. Szewczyk's asking Dr. Joshi whether she intended to leave the emergency room when the hospital's contract with PHS was not renewed and Dr. Levy's failure to introduce Dr. Joshi to a visiting doctor. Neither incident would amount to anything unusual in normal day-to-day interactions in a busy emergency room. Dr. Joshi also complained about the interruption of her "circadian rhythms" by a schedule requiring varying hours of 30–50 per week. Her contract required only an average of 40 hours per week, her schedule was agreed to by her attorneys, and the schedule is consistent with the treatment of all full-time emergency room doctors. Thus, the schedule cannot constitute harassment in violation of the consent order. (Obviously, the needs of a busy 24-hour-a-day emergency room cannot be met by the 9:00 to 5:00 schedule preferred by Dr. Joshi.)

Other incidents appear to have been brought about by Dr. Joshi's own behavior: she failed to report for work as scheduled, she did not arrange alternate coverage for days she could not work as required of all emergency room doctors, and she failed to take on-call assignments. There also were some questions raised as to her handling of certain patients. Dr. Joshi was put on probation in 1981, and she received an unfavorable evaluation from a physician's assistant student.

In summary, her claims of harassment either amount to nothing more than routine and reasonable efforts by the defendants to deal with a professionally competent but volatile and disruptive individual consistent with the treatment of other doctors in the emergency room and with a consent order which was drafted in vague terms. What constitutes a "satisfactory" working relationship is subject to interpretation, but surely it would include conformity with emergency room policies and procedures by both parties, a requirement which the evidence revealed was breached considerably more often by the plaintiff than by the defendants.

▪ Finally, the plaintiff cites as contemptuous the hospital's decision not to hire her when it did not renew the contract with PHS. Dr. Joshi was among four of eight full-time emergency room doctors who were not hired. Hiring by the hospital cannot be contemplated as being within the scope of the consent order, which required only that PHS reinstate her to her prior position as an emergency room physician. *See* Consent Order ¶ 2. The physician's agreement signed pursuant to the consent order specifically stated that she could be terminated at any time for cause; she was given no guarantee of continuous employment by PHS and certainly not by the hospital. Since PHS was not bound to continue Dr. Joshi's employment indefinitely, the Court need not consider the issue of whether the hospital was so bound as the successor or parent of PHS.

### The Title VII Claims

▪ The elements of proof and the burdens of production and proof for a claim under Title VII are well established. In this case, the plaintiff must establish a prima facie case of retaliation for her prior exercise of her civil rights by showing, first, that she engaged in a protected activity (*i.e.*, that she made a legal charge, testified, assisted, or participated in an EEOC investigation; second, that the defendants knew of the protected activities; and finally that the defendants took employment action disadvantageous to the plaintiff and that there was a causal link between the last two elements. *See Plummer v. Bolger*, 559 F.Supp. 324, 332 (D.D.C.1983); 42 U.S.C. § 2000e–3. Retaliatory intent or motive must be shown. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 798 (9th Cir. 1982). If a plaintiff such as Dr. Joshi establishes a prima facie case, the burden shifts to the defendants to show that there was no discriminatory reason for the employment actions taken in that Dr. Joshi's

discharge was a result of her unreasonable and aggressive manner at work. *See McKenzie v. Sawyer,* 684 F.2d 62, 71 (D.C. Cir.1982). At such a point, the plaintiff would reassume the burden to show that the defendants' reasons were only pretextual. *Id.* If evidence is presented which shows a mixed cause for Dr. Joshi's discharge, *i.e.,* both lawful and unlawful reasons, the plaintiff can prevail only if she shows she would have retained her job but for a retaliatory motive. If the plaintiff would have lost her job anyway, absent retaliation for the 1980 EEOC complaints, there was no unlawful retaliation. *See Williams v. Boorstin,* 663 F.2d 109, 117 (D.C.Cir.1980).

■■ Dr. Joshi has not satisfied the first step because she did not make a prima facie case of retaliation. Dr. Joshi asserts that the protected activities in which she engaged were the filings of the 1980 complaints and lawsuits leading to the consent order of November 1980. However, since these activities were the subject of the consent order and hence were merged into the final judgment, they may not serve as the basis of a prima facie case of retaliation in a Title VII lawsuit. "A valid agreement of compromise and settlement of a case properly pending in a court of competent jurisdiction ... constitutes a merger and a bar of all claims properly litigable in such case." 47 Am.Jur.2d *Judgments* § 1093 (1964). *See United States v. American Telephone and Telegraph Co.,* 524 F.Supp. 1336, 1353 n. 70 (D.D.C.1981). Only the consent order itself may be the basis of further litigation.

■■ Furthermore, even if a prima facie case had been made, legitimate, nondiscriminatory, and nonpretextual reasons existed for the decision not to hire Dr. Joshi. Testimony at trial made it clear that the decision was made on the basis that she was not compatible with the group of emergency room doctors who were hired by the hospital, that she could not work cooperatively with the staff and management of the hospital, that she was a disruptive force, and that if she had been hired, other doctors may have resigned. The defendants introduced evidence of examples of her working difficulties, such as her constant complaints about her supervisor's scheduling decisions; (2) her failure to report to work or to arrange alternative scheduling on December 18, 1980; her failure to work or notify of her intent not to work on December 27, 1980; and three incidents in which the plaintiff demonstrated a lack of judgment, *i.e.,* the Bryan Bostich brouhaha, the rerouting argument of December 1980, and the unfavorable physician's assistant's evaluation from a student with whom she cannot remember working. At trial, one of her former supervisors at Greater Southeast Community Hospital summarily characterized Dr. Joshi as "at best, uncommunicative, at worst, verbally abusive."

These factors, individually rather trivial but collectively quite revealing, were corroborated by testimony as to other positions in which she has been employed. For example, Dr. Mehdi Nabavi, the Associate Director of Emergency Services at the Southern Maryland Hospital Center (where plaintiff worked in 1981–83), testified that he intended to have Dr. Joshi placed on probation following behavior which he described as "bizarre, rude, uncontrolled, and volatile." *See* n. 3, *infra.* Dr. Joshi was terminated from the Shaw Community Comprehensive Health Center in 1976 for disciplinary reasons. Dr. Edwin McCampbell from that organization testified that her "history at Shaw was marked by personality conflicts."

Plantiff's hostile nature became evident to the Court in the non-conciliatory, abrasive language reflected in the pleadings and in the letters and documents received as exhibits. There is no question but that among the chief reasons she was not hired by the hospital when PHS stopped staffing the emergency room was Dr. Joshi's incompatibility with the highly desirable goal of achieving a smoothly functioning emergency room. A place of split-second decisions, critical medical needs, and limited person-

nel is no place for a person unwilling and unable to work as a teamplayer.[3]

### The Plaintiff's Discovery Abuse and False Testimony

The discovery and pretrial aspects of this case were handled by United States Magistrate Arthur L. Burnett, Sr. As part of discovery, defendants sought information as to Dr. Joshi's employment at the Southern Maryland Hospital Center, specifically directed to whether she had been reprimanded and placed on probation there. Dr. Joshi did not produce certain documents which defendants believed were in her possession, and she denied having been put in a probationary status.

In April 1984, defendants sought the sanction of dismissal under Fed.R.Civ.P. 37 for what they asserted to be Dr. Joshi's willful failure to provide the discovery required. Magistrate Burnett conducted an evidentiary hearing on the matter on May 29 and June 19, 1984. Particularly at issue was a memorandum dated March 16, 1984, from Dr. Nabavi to Dr. Joshi.[4] Plaintiff was one of the witnesses at the hearing. On five occasions she flatly denied having received the memorandum; on a sixth she asserted that she had no recollection of it.

On July 26, 1984, Magistrate Burnett issued a Memorandum and Order denying defendants' motion for sanctions. Faced with what was then a difficult credibility determination, he concluded that Dr. Joshi was "a credible witness." He concluded in part:

> Indeed, the defendants' evidence failed to establish that Dr. Joshi ever received or saw the memorandum written by Dr. Nabavi which used the word probation.

On September 12, defendants came into possession of a letter from Dr. Joshi to the Chief of the Medical Staff of the Southern Maryland Hospital Center. It was dated March 22, 1983. It was bitter in tone, and its entire thrust was against Dr. Nabavi's reprimand of Dr. Joshi.[5] Plaintiff's letter stated in part:

> Dr. Nabavi then proceeded to take arbitrary and capricious action against me. (See attached memo of March 16, 1983, received by me March 19, 1983.)

The memo which was attached to Dr. Joshi's letter was in fact Dr. Nabavi's memorandum of March 16 which is set forth in footnote 4.

Trial was to begin on September 14, 1984. On September 13, defendants filed with the Court (the case having left the Magistrate) a lengthy Motion for Reconsideration of Decision on Sanctions. Dismissal again was sought. The subject matter was new to the undersigned, who promptly

---

**3.** The plaintiff put forth only two incidents as allegedly demonstrating proof of retaliatory intent. On January 16, 1981, Mrs. Patterson met with Dr. Joshi in an effort to resolve the difficulties which were being encountered, at which time the plaintiff was told, "Well, but we are having problems ... you did sue...." On June 16, 1981, Dr. Levy informed Dr. Joshi that there would be no position for her in the emergency room after the hospital took over. Asked whether there were any reasons, he said no. In light of the foregoing nonretaliatory reasons for the hospital's not hiring of the plaintiff, these incidents do not supply the necessary inference of retaliatory intent sufficient to supply the "but for" rebuttal.

**4.** It reads as follows:
> MEMORANDUM
> TO: Pratibha Joshi, M.D.
> FROM: Mehdi Nabavi, M.D.
>   Associate Director—Emergency Services
> SUBJ: Disciplinary Action

DATE: March 16, 1983
> On February 13, 1983, following the care of a patient at the Southern Maryland Hospital Center Emergency Room, you exhibited a bizzare, rude, uncontrolled and volatile behavior while being observed by the Emergency Room staff and many patients.
> I chose to give you every opportunity to take reparative action, which you have failed to do.
> You are hereby reprimanded for your actions of February 13th and are placed on probation. Your behavior was professionally and socially unacceptable and if noted again, will result in your immediate dismissal.

**5.** It should be noted that the Chairman of the Department of Emergency Medicine at the Southern Maryland Hospital Center testified in the hearing before Magistrate Burnett that Dr. Nabavi did not have the authority to put Dr. Joshi on probation.

read the pleading. On the next morning, the Court denied the motion and trial commenced.

It now is clear that Dr. Joshi received the memorandum and retained a copy of it. It also is clear that Dr. Joshi failed to respond to legitimate discovery requests and willfully testified contrary to her oath numerous times on the record, both in the hearing before Magistrate Burnett and at the trial.[6] Her lack of credibility is further evident when contrasted with the testimony at trial of Dr. Nabavi and Bonnie Johnson, the Administrative Assistant in the emergency room of Southern Maryland Hospital Center (both of whom also had testified in the Magistrate's hearing).

Beyond finding Dr. Joshi not to be credible on this discovery matter, the Court finds that Dr. Joshi was not a credible witness in her overall testimony. Once a witness is found to have lied with respect to a particular matter, it is difficult to accord her testimony the veracity it may deserve without extensive rehabilitation. No such rehabilitation occurred here. Consequently, Dr. Joshi's truthfulness remained in question throughout the trial.

In considering the appropriate sanctions under Rule 37 for Dr. Joshi's discovery abuse, at this stage dismissal of the case is not feasible. Rather, the Court hereby imposes the same sanctions as those specified in the Magistrate's Order issued April 19, 1984, i.e., requiring Dr. Joshi to pay the defendants' cost of obtaining the March 16, 1983, memorandum of Dr. Nabavi and the March 22, 1983, letter of Dr. Joshi. This shall include reasonable expenses incurred in preparing the various motions related to sanctions and for reconsideration and in preparing for, and participating in, the evidentiary hearing before Magistrate Burnett on May 29 and June 19.[7]

### Conclusion

Even if the Court were to conclude that Dr. Joshi had been a fully credible witness (which, as noted, it does not), she nonetheless woefully failed to make out a prima facie case of discrimination or retaliation. The Clerk shall enter a judgment providing that the plaintiff shall take nothing and dismissing the cases.[8]

SO ORDERED.

---

6. In open court immediately prior to the commencement of trial, the Court made the following statement to counsel for Dr. Joshi:

    Among the problems that are presented, Mr. Schwartz, is the possibility that this matter might ultimately be referred to the United States Attorney's Office for a possible perjury charge. [See 18 U.S.C. § 1621.]

    So Dr. Joshi should understand, to the extent she testifies in this proceeding, anything she says could be used in any such proceeding against her.

    She should be on notice anyway that that is a possibility.

7. Defendants may submit pleadings directed to such costs and expenses within three weeks of the date of this Memorandum Opinion and Order; plaintiff may have two weeks thereafter within which to respond thereto. (Costs otherwise allowable to the defendants under Rule 54(d) shall be determined by the Clerk of the Court.)

8. On March 27, 1934, in an effort to terminate this essentially frivolous litigation which has consumed such extraordinary resources, the defendants made an offer of judgment pursuant to Rule 68 in the amount of $20,000. That offer was rejected by the plaintiff.