Pratibha JOSHI, Dr., Appellant,

v.

**PROFESSIONAL HEALTH
SERVICES, INC., et al.**

Pratibha JOSHI, Appellant,

v.

**PROFESSIONAL HEALTH
SERVICES, INC., et al.**

Pratibha JOSHI, Appellant,

v.

**GREATER SOUTHEAST COMMUNITY
HOSPITAL, et al.**

**Nos. 85–5633 to 85–5635.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 27, 1987.

Decided May 1, 1987.

See also, D.C., 606 F.Supp. 302.

D.S. Sastri, Silver Spring, Md., for appellant.

Robert G. Brewer, Jr., Bethesda, Md., with whom Charles Gallagher, Mary Lou Mayers, and John B. Williams, Washington, D.C., were on the joint brief, for appellees.

Lawrence A. Miller, Washington, D.C., also entered an appearance for appellees.

Before MIKVA, STARR and WILLIAMS, Circuit Judges.

Opinion Per Curiam.

PER CURIAM:

This appeal raises a variety of questions arising out of a physician's wide-ranging employment discrimination suit against her former employer, a one-time prospective employer, and several physicians. Holding that the defendants had not violated their obligations under a consent decree settling prior litigation among the parties and that the prospective employer had not refused to hire the plaintiff for unlawful reasons, the District Court granted judgment in their favor. In addition, the District Court sanctioned the plaintiff for discovery abuse. After review, we affirm the judgment in all respects.

I

Neither the long history of this litigation nor the saga of the parties' stormy relationship need be recounted in detail. The following should suffice to set the stage for the questions before us. From July 2, 1978 until June 30, 1981, Professional Health Services, Inc. (Professional Health) provided emergency room physician services to Greater Southeast Community Hospital (the Hospital). Under their respective employment contracts with Professional Health, three physicians who were destined to meet one another in the trenches of litigation, Drs. Pratibha Joshi, Celeste Szewczyk, and Martha Gramlich, were employed in the Hospital's emergency room.

In July 1980, shortly after being passed over for two promotions, Dr. Joshi filed two complaints with the Equal Employment Opportunity Commission (EEOC), and eventually lawsuits in federal district court in Maryland, asserting claims under the Equal Pay Act and alleging harassment and racially discriminatory denial of a promotion. In September 1980, concluding that her intractable behavior vis-a-vis her colleagues had made her impossible to work with, Professional Health fired Dr. Joshi. Pursuant to a consent order, however, the litigation was terminated and Dr. Joshi was reinstated in November of that year.

On June 30, 1981, the underlying contract between Professional Health and the

Hospital terminated in accordance with its terms. Conducting its own emergency room hiring, the Hospital chose not to hire Dr. Joshi. As a result, Dr. Joshi promptly filed suit in Maryland once again, alleging violations of the consent order by Professional Health, the Hospital, Dr. Szewczyk, and Dr. Gramlich; in addition, she alleged retaliation in violation of Title VII arising out of her 1980 EEOC complaints against the Hospital, Professional Health, and Dr. Szewczyk.[1]

The case was transferred to the District of Columbia where, following a six-day bench trial, the District Court held in favor of defendants on all claims. In addition, the trial court concluded that Dr. Joshi had abused the discovery process by failing to supply a requested disciplinary memorandum in her possession and that she had lied under oath during the course of a hearing before a United States Magistrate on the discovery issue. The District Court accordingly imposed sanctions on Dr. Joshi, requiring her to pay the costs incurred by defendants in obtaining the memo and litigating the discovery question.

## II

Before this court, Dr. Joshi challenges all three aspects of the District Court's decision. We discuss each in turn.

## A

■ In her initial line of attack, Dr. Joshi charges that defendants violated the consent order in several respects, and thus should have been held in contempt.[2] *First,*

she claims that defendants failed to comply with paragraph 3 of the order, which states:

Plaintiff, Prathiba Joshi, will execute the [employment] contract ... attached to this Order.

Dr. Joshi contends that Professional Health's two-month delay in signing the contract violated the provision. As the District Court correctly pointed out, however, the order neither specified a date by which the contract was to be executed nor required that it be executed promptly. (Indeed, the provision by its express terms imposed no obligation at all on Professional Health, but solely on Dr. Joshi.) The court therefore determined, and we agree, that the delay was not contemptuous.

■ Dr. Joshi next claims that the Hospital's decision not to hire her when its contract with Professional Health expired violated the consent order. She argues that under her employment contract with Professional Health she could only be fired for cause; that the Hospital was bound as Professional Health's successor; and that the Hospital's decision not to rehire her (which she equates with a decision to fire her) was not grounded on cause. This line of reasoning is scarcely compelling, but whatever the merits of the argument may be, Dr. Joshi's contentions in this respect are wholly irrelevant to her contempt claim. Dr. Joshi chose not to sue for breach of contract, but only for contempt of the consent order. This tack was ill-considered inasmuch as Professional Health fulfilled its specific duties under the order with respect to the employment contract

1. Throughout this litigation, Dr. Joshi has consistently failed to refine her claims against the various defendants. With regard to the consent order, she has collectively charged Professional Health, the Hospital, and the individual physicians with contempt of the provisions at issue, even though the provisions generally refer to only one of the defendants, and indeed, the Hospital was not even a party to the consent order. Likewise, Dr. Joshi has asserted her Title VII retaliation claims against the Hospital, Professional Health, and Dr. Szewczyk, despite the fact that only the Hospital was in a position to hire her.

2. We observe that Dr. Joshi seeks relief in the form of a contempt citation. Although a court

may adjudge a party in contempt for failure to abide by a court order, such as the consent order at issue here, "[t]he judicial contempt power is a potent weapon." *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). In light of the remedy's extraordinary nature, courts rightly impose it with caution.

In addition, we note that the Hospital was not a party to the consent order. The Hospital, of course, is therefore not bound by the order, and, as a result, cannot be held in contempt for "violations" of that order.

once it executed the agreement. In our view, Dr. Joshi's contract claims, if any, lie outside the scope of the consent order itself; they cannot do service as the basis for a contempt citation.

■ *Second*, Dr. Joshi invokes paragraph 6 of the consent order, requiring that:

Defendant, Professional Health Services, Inc., shall remove from the personnel file of Plaintiff, Pratibha Joshi, all material documenting complaints or incidents entered in such file subsequent to July 18, 1980.

Apparently, two files that could be considered "personnel" files were maintained. A file located at Professional Health's corporate office contained items such as Dr. Joshi's pay stubs, tax forms, and expense vouchers, and an emergency room file contained, among other things, complaints and accounts of incidents involving Dr. Joshi. Dr. Joshi contends that the consent order contemplated expungement of the emergency room file, and that defendants violated the order by expunging only the file at the corporate office. We agree with the District Court, however, that the import of this rather general provision is unclear and imprecise. The consent order directs Professional Health to expunge Dr. Joshi's "personnel file." That directive, framed in the singular, would thus seem on its face to require Professional Health to expunge *its* personnel file on Dr. Joshi, which it of course did. · Dr. Joshi failed to establish that the file in the emergency room was under Professional Health's control; indeed, quite the contrary appears to be the case. The evidence suggests that the file situated in the Hospital's emergency room was a working file maintained by the Hospital's staff.

As made clear by the confusion in this case, "personnel file" is not a self-defining term that admits of only one meaning, especially in a context where, as here, the professional employee is rendering contract services away from the employer's premises. At the time that the consent order was drafted, Dr. Joshi obviously had an opportunity to specify the exact file or files to be expunged or otherwise to ensure that the provision was crafted in terms broad enough clearly to encompass all files containing adverse documents. *Cf.* 5 U.S.C. § 552(b)(6) (1982) (FOIA exemption for "personnel and medical files and *similar files* ") (emphasis added).

In addition, counsel for Professional Health assured us at oral argument that, once the problem was brought to Professional Health's attention, the offending file was promptly removed from the emergency room (presumably upon the consent of the Hospital) and has since been maintained in counsel's files solely for purposes of this litigation. Under these circumstances, Professional Health's failure to expunge the emergency room file hardly rises to the daunting level of contempt in view of the general wording of paragraph 6.

■ *Third,* Dr. Joshi claims that defendants did not fulfill their commitment under paragraph 7 of the consent order to "seek to ensure a satisfactory working relationship." Based upon our review of the record, we are satisfied that the District Court properly concluded that the acts of "harrassment" complained of by Dr. Joshi were essentially "unpleasant annoyances" and "unintentional and insignificant oversights." We further agree with the District Court that defendants made reasonable efforts to deal with "a professionally competent but volatile and disruptive individual." *Joshi v. Professional Health Services, Inc., et al.,* 606 F.Supp. 302, 307 (D.D.C.1985).

## B

Dr. Joshi contends that defendants retaliated against her in violation of Title VII for engaging in protected activity, namely the 1980 filings and lawsuits that eventuated in the consent order. The District Court held that those activities were merged into the consent order (a final judgment) and therefore could not serve as the basis for a *prima facie* case.

■ In response, Dr. Joshi contends that although the consent order bars claims of retaliation arising prior to its entry, it can-

not preclude litigation of claims based on retaliation effected subsequent to that date. We agree. As the Fifth Circuit aptly stated in *Dawkins v. Nabisco, Inc.,* 549 F.2d 396, 397 (5th Cir.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977):

> Were we to rule that the [earlier] adjudication was somehow dispositive of the factual dispute regarding alleged subsequent retaliation, a company that had once won a suit alleging retaliation for participating in Title VII proceedings would be free to retaliate at will against the earlier plaintiff without fear of being held accountable for its actions. The law of res judicata establishes no such result.

Notwithstanding this false step, however, the District Court did not come to rest at this juncture. It went on to hold, in the alternative, that even if a *prima facie* case had been established, legitimate, nondiscriminatory, and nonpretextual reasons fully explained the Hospital's decision not to hire Dr. Joshi. The District Court determined that, rather than being retaliatory in nature, the Hospital's decision "was made on the basis that she was not compatible with the group of emergency room doctors who were hired by the hospital, that she could not work cooperatively with the staff and management of the hospital, that she was a disruptive force, and that if she had been hired, other doctors may have resigned." *Joshi,* No. 83–1073 at 11. The District Court's conclusion is amply supported by the record, and Dr. Joshi has been unable to advance a persuasive case to the contrary.

## C

Finally, Dr. Joshi contends that the District Court improperly sanctioned her for discovery abuse. To address this challenge, it is necessary to return briefly to the facts. During discovery, Dr. Joshi failed to produce a disciplinary memo sought by defendants. A two-day evidentiary hearing on the matter was conducted before Magistrate Burnett, during which Dr. Joshi flatly denied no less than five times having received the memo. Facing a difficult credibility determination, the Magistrate ruled in Dr. Joshi's favor.

Two months later, however, defendants located a letter from Dr. Joshi to the Chief of the Medical Staff of the Southern Maryland Hospital Center. The disciplinary memo at issue was not only specifically referred to in Dr. Joshi's letter, but was physically attached to the letter itself. The District Court expressly warned Dr. Joshi that she faced a potential perjury charge and then imposed sanctions, *see supra* text at 4.

Before us, Dr. Joshi insinuates that defendants fabricated the letter and accompanying memo, relying on the fact that they were not available at the Magistrate's hearing, and that defendants introduced a copy, which bore telltale signs of restapling, into evidence at trial. But this conspirational theory lacks any foundation in the evidence of record; to the contrary, Dr. Mehdi Nabavi, the author of the unflattering memorandum, adequately explained the apparent incongruities with respect to the memo.[3] Under these circumstances, we are persuaded that the District Court was entirely warranted in imposing sanctions.

*Affirmed.*

---

[3] Dr. Nabavi, who was the Associate Director of the Emergency Department at Southern Maryland, testified that Southern Maryland's Chief of Staff gave him a copy of Dr. Joshi's letter and the attached memo at a meeting during which Dr. Joshi's performance was discussed. Originally, there was a second attachment to the letter, unrelated to Dr. Nabavi, that he did not receive and hence, the restapling. Dr. Nabavi found the letter among papers he was sorting through when preparing his tax return, an event which occured only after the hearing before Magistrate Burnett.