CONSERVATIVE CLUB OF
WASHINGTON, Plaintiff,

v.

Nathan I. FINKELSTEIN, Defendant.

Civ. A. No. 89–3415.

United States District Court,
District of Columbia.

May 18, 1990.

W. Steven Paleos, Redmon Law Offices, Alexandria, Va., for plaintiff.

Mitchell B. Weitzman, Joan Slous, Deso & Greenburg, P.C., Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on defendant's motion to dismiss, or in the alternative for summary judgment, and upon plaintiff's cross-motion for summary judgment on its claim for slander of title. Defendant has also filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Plaintiff in its complaint asserts claims for negligence, tortious interference with contract, and slander of title. Plaintiff is seeking compensatory as well as punitive damages. This action is properly before the Court since it involves citizens of different states and the amount in controversy exceeds $50,000. 28 U.S.C. § 1332.

## I. STANDARD FOR MOTION TO DISMISS

When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and its allegations must be taken as true. Moreover, any ambiguities or uncertainties concerning the sufficiency of the claims

must be resolved in favor of the plaintiff. *See Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also* 5 Wright & Miller, Federal Practice and Procedure § 1357 (1969). As the Supreme Court has stated:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Thus, at this stage, plaintiff's statement of the facts must be accepted as true.

Defendants' seek the dismissal of plaintiff's complaint. They assert that the various counts of plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).[1] Given the relevant legal standard, this Court will treat plaintiff's factual allegations as true when evaluating defendant's substantive motion.

## II. FACTUAL BACKGROUND

Plaintiff Conservative Club ("Club") is a non-profit corporation duly organized and operating pursuant to the laws of the District of Columbia. This action stems from a dispute which arose when the Club attempted to convey a portion of the property where its facility is located to Dunn Brady Associates, Architects ("Dunn Brady"). The agreed upon sales price was $1,200,-000. The contract of sale was entered into on or about June 6, 1988.

In order to completely understand the events which subsequently occurred, it is necessary to examine the history of the parcel which is the subject of this dispute. The Club originally obtained title to the subject property and the facilities constructed thereon in fee simple pursuant to a deed dated April 11, 1955. Pl. Opp. at 4 n. 1. The Club remained in exclusive control of the subject property until on or about December 1977. At that time, the Club deeded the subject property to an individual named Bruce H. MacLeod, Jr. (MacLeod), with the Club reserving the right to continue to occupy the subject property. On or about December 31, 1980, MacLeod formed the "1640 21st Street Condominium" which was and is comprised of two (2) condominium units. The property which is the subject of this dispute was originally included in the condominium plan. On December 22, 1986, Mr. MacLeod amended the condominium regime to withdraw the subject property. Pl.Ex. 9. On or about December 29, 1986, MacLeod conveyed one of the condominium units to Richard Stanton–Jones. Pl.Ex. 6. On or about April 13, 1987, the second condominium unit was conveyed to Kathy Jean Zebrowski.

On or about February 16, 1988, the Club re-acquired the subject property (the rear 54.2 feet of the lot) from MacLeod for $35,000. Pl.Ex. 8. Prior to consummating the transaction, the Club had a title search performed that found no recorded encumbrances. Amended Complaint, ¶ 13. On or about June 6, 1988, the Club contracted with Dunn Brady to convey the subject property along with the adjacent property for the sum of $1,200,000. It was Dunn

---

**1.** Both plaintiff and defendant have filed affidavits and other documentary exhibits with the Court. To the extent that this Court relies on these additional filings in making its determination, defendant's motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) & 56. Rule 56 provides, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the court must consider the pleadings, related documents, and evidence in a light most favorable to the non-moving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Brady's intention to develop the property into more condominiums. Amended Complaint, ¶¶ 15–16. In late 1989 and early 1990, Mr. Dunn, a principal of Dunn Brady, believed that the parcel he had agreed to purchase needed to be resubdivided. Mr. Dunn then approached Mr. Stanton–Jones and Ms. Zebrowski the abutting landowners to obtain their consent to join in a resubdivision application. Stanton–Jones and Zebrowski retained defendant Finkelstein to represent them in their dealings with Mr. Dunn. Finkelstein and his clients attended a meeting with Mr. Dunn to discuss the resubdivision. Finkelstein's clients refused to join in the application. Amended Complaint, ¶¶ 17–18.

Finkelstein had follow-up conversations with Mr. Dunn. During these discussions, Finkelstein stated that there was a problem with the title to the subject property and that unless his clients received $100,000 a law suit would be instituted which could tie up the property for 2–3 years. As a result, Dunn Brady was unable to obtain title insurance.

In response, the Club initiated a quiet title and slander of title action in the Superior Court for the District of Columbia naming Finkelstein's clients as the defendants. This action was filed on May 12, 1989. Def.Ex. 2. The case was eventually settled and the case dismissed. The terms of the settlement were as follows: 1) the Club was to pay a total sum of $40,000 to Finkelstein's clients, Stanton–Jones and Zebrowski; 2) said clients agreed to execute a resubdivision application and any other necessary documents to accomplish a resubdivision; and 3) Stanton–Jones and Zebrowski agreed not to interfere with Dunn Brady's construction and development plans as long as they were in conformity with the law. Def.Ex. 1. As a result of the filing of the quiet title and slander of title action and the ensuing negotiations, the Club's transfer of the property to Dunn Brady was delayed approximately 5 months. This delay had the effect of imposing certain costs upon the Club.

## III. PLAINTIFF'S LEGAL CLAIMS

### A. *Count I—Negligence*

Plaintiff seeks to recover from defendant Finkelstein for the damages that allegedly resulted from the delays associated with effecting the closing on the subject property. Plaintiff contends that defendant Finkelstein owed a duty to the Club to "determine the truth of the claims he made regarding the Club's title." Amended Complaint, ¶¶ 25–26. Plaintiff further contends that defendant breached that duty by making false claims and threatening a law suit. *Id.*

■ Plaintiff's legal arguments on this claim are patently untenable. It is hornbook law that in order to maintain a negligence action a plaintiff must satisfy four basic elements. Those elements are as follows:

1) A duty, or obligation, recognized by law, requiring a person to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

2) The duty owed must have been breached;

3) A reasonably close causal connection must exist between conduct and the resulting injury, i.e. proximate cause; and

4) The breach of duty must lead to actual loss or damage. W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts § 30 (5th ed. 1984). To avoid dismissal of Count I of its complaint, plaintiff must satisfy each of these four elements.

Plaintiff's claim for professional negligence must fail because an attorney owes no duty to opposing counsel or an adverse party. *Cresswell v. Sullivan & Cromwell,* 704 F.Supp. 392, 410 (S.D.N.Y.1989), citing *Savings Bank v. Ward,* 100 U.S. (10 Otto) 195, 200, 25 L.Ed. 621 (1880). In *Ward,* the Supreme Court held that absent fraud, collusion, or privity of contract, an attorney is not liable to a third party for professional negligence. The District of Columbia in *Morowitz v. Marvel,* 423 A.2d 196 (D.C. 1980), adheres to this view.

Courts in other jurisdictions have recognized certain exceptions to this strict privity requirement. In particular, courts have shown a willingness to permit the intended beneficiaries of an attorney's services to maintain an action against that attorney. *See e.g., Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962) (recognizing a cause of action for intended beneficiaries of a will against the attorney who drafted it); *Vereins–Und Westbank, AG v. Carter,* 691 F.Supp. 704, 715–716 (S.D.N.Y.1988) (recognizing a cause of action for the recipients of an opinion letter drafted by an attorney at the request of his client); *see also Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985) (discussing in detail attorney's liability to third party non-clients and holding that non-client can maintain a negligence action upon demonstrating that client had an intent to benefit the third-party non-client). The District of Columbia has noted this trend in the law and nevertheless has concluded that "The mere fact that the third party was a foreseeable plaintiff [is] not, however, sufficient to give rise to a legal duty to third parties." *Morowitz,* 423 A.2d at 199.

The non-client third parties here could not in any way be considered to be the intended beneficiaries of the attorney/client relationship that existed between Finkelstein and his clients, Stanton–Jones and Zebrowski. Rather, these parties had directly adverse interests. Applicable law and sound public policy require that third-party non-clients not be permitted to maintain a negligence action against an attorney in such circumstances. As has been noted by courts in other jurisdictions, the policy of free access to the courts as a means of settling private claims is at the very foundation of our judicial system. As one court has declared:

[A] litigant's free access to the courts would frequently be of little value to him if he were denied counsel of his choice by a rule which rendered attorney's fearful of being held liable as insurers of their client's case, and therefore unwilling to undertake representation in close or difficult matters. The very purpose of a court of law is to determine whether an action filed by a party has merit and we refuse to recognize a rule which would render a litigant and his attorney liable in tort for negligently (or even, willfully and wantonly) failing to determine in advance that which, ultimately, only the courts could determine.

*Lyddon v. Shaw,* 56 Ill.App.3d 815, 14 Ill. Dec. 489, 494, 372 N.E.2d 685, 690 (1978) (target of a medical malpractice suit could not maintain a negligence action against his former patient's attorney even though doctor alleged that attorney did not examine the records relating to the treatment provided prior to filing suit).

An attorney owes a duty to zealously and vigorously represent the interests of his client(s). To adopt a rule of law that would expose an attorney to the prospect of negligence claims by parties whose interests are adverse to those of his client would result in the demise of our adversarial system of justice. "[An] attorney owes his primary and paramount duty to his client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is not foreseeable reliance by that party on the attorney's conduct." *Bickel v. Mackie,* 447 F.Supp. 1376, 1381 (N.D.Iowa), *aff'd,* 590 F.2d 341 (8th Cir.1978).

Plaintiff argues that Finkelstein as an attorney was under a duty to the public at large and that duty is imposed by the Code of Professional Responsibility and Disciplinary Rule 7–102(A) in particular. That rule provides in pertinent part:

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another. . . .

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law....

(5) Knowingly make a false statement of law or fact.

DR 7–102(A). The Court in *Bickel* was faced with a similar allegation and found it to be without merit. *Bickel,* 447 F.Supp. at 1376. Violations of the Code of Professional Conduct are not tantamount to a tortious act, particularly with regard to liability to a non-client. The Model Code does not in any way create a private cause of action. As the preliminary statement to the Model Code provides: "The Code does not attempt to prescribe either disciplinary procedures of penalties for violation of a Disciplinary Rule, *nor does it undertake to define standards for civil liability of lawyers for professional conduct.*" (emphasis added). Plaintiff concedes that it can cite no case law that supports its interpretation of the application of the disciplinary rules to the negligence context.[2]

In analyzing a similar case, the Michigan Supreme Court aptly declared:

Assuming that an attorney has an obligation to his client to conduct a reasonable investigation prior to bringing an action, that obligation is not the functional equivalent of a duty of care owed to the client's adversary. *We decline to so transform the attorney's obligation because we view such a duty as inconsistent with basic precepts of the adversary system.*

*Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585, 591 (1981) (no duty owed by attorney who instituted a medical malpractice case to the target of that action). The notion that an attorney owes a duty to his client's adversary is entirely inconsistent with the practice of law in this nation and with the attorney-client relationship. To impose such a duty could place an attorney in the difficult position of choosing whether to proceed in a manner that is consistent with his clients best interests or to proceed in the manner that is least likely to expose him to a future action by his client's adversary. The adversarial system cannot countenance such a rule of liability that has the effect of chilling zealous advocacy. "[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it. In the present context, the duty is owed by the lawyer to his client and to the legal system. It does not form a basis for a suit by an opposing party." *Tappen v. Ager,* 599 F.2d 376, 379 (10th Cir.1979).

This Court finds plaintiff's claim for negligence to be entirely without merit and Count I is accordingly dismissed.

### B. Count II—Tortious Interference With Contract

 Plaintiff asserts that defendant Finkelstein tortiously interfered with the contract of sale that existed between plaintiff and Dunn Brady. In its complaint, plaintiff alleges that the defendant knew that a contract of sale existed between the Club and Dunn Brady, that the claims advanced by Finkelstein interfered with the performance of that contract, that Finkelstein's actions were malicious and intentional, and that these actions resulted in the plaintiff suffering damages. Under District of Columbia law, the elements of a claim of tortious interference with contractual relations are 1) the existence of a legal contract; 2) defendant's knowledge of that contract; 3) intentional interference without justification; and 4) resulting damages. *Dunn v. Cox,* 163 A.2d 609, 611 (D.C.1960); *In re Ashby Enterprises,* 47 B.R. 394, 397 (D.D.C.1985). The facts as stated by plaintiff lead this Court to conclude that as a matter of law Finkelstein cannot be said to

---

**2.** This does not mean that a party is without relief where a breach of Disciplinary Rule 7–102 has in fact occurred. A complaint with the District of Columbia Bar Association is the appropriate course of action to pursue. In addition, if a frivolous law suit is filed in a jurisdiction where Rule 11 of the Federal Rules of Civil Procedure or its equivalent is available, another option would be to file a motion pursuant to that provision.

have tortiously interfered with the Club–Dunn Brady contract. Indeed, it was one of the principals of Dunn Brady, Mr. Dunn, that approached Stanton–Jones and Zebrowski in order to seek their approval of a plan to resubdivide the property that was the subject of the sales contract. It is obvious to this Court that Mr. Dunn as an experienced developer was simply seeking the additional comfort that he deemed to be essential prior to consummating the land purchase. Plaintiff now asserts that Mr. Dunn was in error and that approval from the abutting landowners was not necessary.

When confronted with the request by Mr. Dunn, Stanton–Jones and Zebrowski sought the legal counsel of Mr. Finkelstein. This is precisely what laymen are expected to do. Neither Stanton–Jones nor Zebrowski could be expected to sign the application for resubdivision without first obtaining legal advice. Finkelstein met with his clients and discussed the situation. Mr. Dunn wanted the approval of Finkelstein's clients and the clients wanted something in return. Negotiations ensued during which it is alleged that Finkelstein asserted that his clients had some rights in the subject property and that if litigation was necessary the sale and development of the property could be delayed for 2–3 years. Negotiations resulted in Finkelstein's clients agreeing to join the application for resubdivision for the payment of $40,000. In these negotiations, Finkelstein was simply performing his function as the representative of his clients' interests. Now, plaintiff wants to obtain the moneys paid to Finkelstein's clients from Finkelstein himself. To state plaintiff's position is to demonstrate its lack of merit.

■ As part of the measures it took to complete its transaction with Dunn Brady, the Club made a decision to institute in the Superior Court for the District of Columbia a quiet title and slander of title action against defendant Finkelstein's clients. Def.Ex. 2. Subsequent to the filing of that suit, negotiations took place between the attorney for the Club and the defendant Finkelstein, who was representing the interests of the defendants in that action. As a result of those negotiations, a settlement agreement was reached. That agreement although not memorialized in a separate document entitled "settlement agreement" is contained in correspondence that was exchanged between the attorneys for the parties to that action. The agreement provided for the payment of $40,000 to Finkelstein's clients, and in consideration for that payment Stanton–Jones and Zebrowski agreed to execute the documentation necessary for the resubdivision application. Def.Ex. 1. The Club also agreed to dismiss the quiet title and slander of title action against Finkelstein's clients. Def.Ex. 3.

Plaintiff now contends that the specific terms of this settlement did not release the defendant Finkelstein. Plaintiff makes much of the fact that the settlement letter does not state that any claims against the "agents and attorneys" of Stanton–Jones and Zebrowski were also settled. This Court must reject plaintiff's argument. "A valid agreement of compromise and settlement of a case properly pending in a court of competent jurisdiction ... constitutes a merger and bar of all claims properly litigable in such case." *Joshi v. Professional Health Services, Inc.*, 606 F.Supp. 302, 308 (D.D.C.1985), *aff'd* 817 F.2d 877 (D.C.Cir. 1987) (quoting 47 Am.Jur.2d Judgments § 1093 (1964)). Moreover, "Voluntary settlement of civil controversies is in high judicial favor.... When the effort is successful, the parties avoid the expense and delay incidental to litigation of the issues...." *Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C.Cir.1969). Here, the Club made a conscious and informed decision to settle its dispute with Finkelstein's clients. Clearly, the intention of the parties at the time was to resolve this dispute conclusively and completely. Now, the Club seeks in effect to relitigate the very same issues that were the subject of the action that it initiated in the Superior Court. However, instead of suing the named defendants in that prior action, the Club seeks to recover from their attorney. Such manipulation of the legal system cannot be tolerated.

The Club made a business decision to settle the prior dispute. Now, it seeks both the benefit of that settlement and the additional right to maintain an action that arose out of the same nucleus of operative facts. If such an action were to be permitted, the certainty and finality that accompanies a settlement agreement would always be subject to question. By filing such an action, the Club undercuts the entire purpose of the settlement—that being to avoid the need for a litigation on the merits. *See Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C.Cir.1982).

Accordingly, defendant's motion for summary judgment is granted as to Count II of plaintiff's complaint.[3]

### C. *Count III—Slander of Title*

█ Plaintiff contends that statements made by the defendant Finkelstein constitute a "slander of title." In order to state a claim for slander of title, plaintiff must allege the following elements: 1) the communication relating to title was false and malicious; 2) damages resulted from the publication of the statements; and 3) if, special damages are sought, the underlying facts must be pled with specificity. *Herzog v. Kronman*, 82 F.2d 859 (D.C.Cir.1936). Plaintiff, in its amended complaint, has alleged that Finkelstein knew that his claims were false and that he made the statements with actual malice.

█ Plaintiff's claim must fail not because its pleading is insufficient, but because the alleged slanderous statements were made by an attorney in contemplation of litigation. The Restatement (Second) of Torts, § 586 provides:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel it has some relation to the proceeding.

Restatement (Second) of Torts § 586 (1977). The Restatement takes the position that this privilege attaches in instances that involve slander of title claims. Restatement (Second) Torts § 635 (1977). The District of Columbia recognizes this privilege. *Arneja v. Gildar*, 541 A.2d 621 (D.C.1988).

In *Arneja*, the court noted that "[i]n this jurisdiction, an attorney 'is protected by an absolute privilege to publish false and defamatory matter of another' during the course of or preliminary to a judicial proceeding, provided the statements bear some relation to the proceeding." *Id.* at 623 (citations omitted). The determination of whether a communication is privileged is a question of law for the court. *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C.1983). The statements at issue in *Arneja* took place in a hearing room at the District of Columbia Rental Accommodations Office. The hearing examiner was not present at the time and the proceeding had not yet commenced. Noting that the District of Columbia, in *Mazanderan v. McGranery*, 490 A.2d 180 (D.C.1984), had expanded the scope of the privilege to encompass "quasi-judicial proceedings," the *Arneja* court held that statements made in conferences prior to "quasi-judicial" proceedings fell within the absolute privilege.

The District of Columbia Courts have not directly addressed a fact situation similar to that presently before this Court. Where as here the alleged slanderous statements were made prior to any litigation actually being filed, the relevant question becomes should such statements be protected by the privilege. Plaintiff contends that extension of the privilege would be inappropriate because there was no pending litigation at the time of the statements and no proceedings had commenced. This Court disagrees with plaintiff's narrow reading of the applicable scope of the privilege. Comment e to the Restatement (Second) of Torts § 586 states:

> As to communications preliminary to a proposed judicial proceeding the rule

---

**3.** If plaintiff has doubts about the settlement agreement, its remedy is to seek rescission in the court where the action which precipitated the settlement was instituted. This Court cannot now permit plaintiff to collaterally attack the terms of that settlement.

stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

Restatement (Second) of Torts § 586 comment e (1977). This Court is convinced that at the time the alleged statements were made defendant Finkelstein was seriously considering filing a suit on the behalf of his clients. Additionally, the statements alleged to have been made were not broadly published to the public at large. Rather, the communications simply took place between the Club, Dunn Brady, and Finkelstein and his clients. It cannot be forgotten that it was the prospective purchaser that initiated the contact with Finkelstein's clients in order to obtain their willingness to join in a resubdivision application. Thus, it can be inferred that Dunn Brady itself had doubts about the subject property. Moreover, plaintiff itself concedes that it believed that Finkelstein was in fact going to file suit. In paragraph 22 of the amended complaint, plaintiff alleges "The Club, at a cost of $44,000, was forced to prosecute a quiet title action and pay the adjoining landowners money in order to preclude Finkelstein's threatened lawsuit." Amended Complaint, ¶ 22.

The alleged slanderous statements fall within the privilege that is recognized by the Restatement. The fact that the statements were made prior to the filing of an action and the pendency of formal judicial proceedings does not in itself defeat the privilege. Here, the statements were made in contemplation of litigation to the very individuals who would have an interest in the outcome of such litigation. There is a strong public policy in favor of free access to the courts, but there is also a strong public policy in favor of individuals privately resolving their disputes without resort to the judicial process. The statements alleged to have been made by Finkelstein are quite analogous to those that are often contained in demand letters. To hold an attorney liable for such statements would disrupt the proper functioning of the adversarial process and certainly have a chilling effect on zealous advocacy.

■ Moreover, this claim is barred by the settlement agreement entered into by the Club and the clients of Finkelstein. *See supra* at 12–13. The Club raised a "slander of title" claim in the suit it filed against Finkelstein's clients in the Superior Court. It is unconscionable for a party to institute a lawsuit, abandon that action by agreeing to a settlement and then subsequently file in another forum a second action that has the practical effect of collaterally attacking that prior settlement. If plaintiff is not satisfied with the settlement and believes that the negotiating attorney of its adversaries overreached or otherwise acted improperly, plaintiff should bring any subsequent legal action before the court that originally had jurisdiction over the matter or seek to institute disciplinary proceedings. Plaintiff was aware of all the facts alleged in the instant action at the time it agreed to settle its Superior Court suit against Finkelstein's clients. Our judicial system would be undermined if parties were permitted to initiate an action in one court, settle that action, and then later seek to relitigate the underlying facts in another forum. This Court will not tolerate such "lying-in-wait" conduct by the plaintiff.

Accordingly, defendant's motion for summary judgment is granted as to Count III of plaintiff's complaint.

## IV. DEFENDANT'S RULE 11 MOTION

■ Defendant in the instant action has filed a motion pursuant to Rule 11 of the Federal Rules of Civil Procedure seeking an award of attorney's fees and the imposition of sanctions against the plaintiff and its counsel. Rule 11 provides in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable in-

quiry it is well grounded in fact and is warranted by existing law, or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

In its response, plaintiff asserts that sanctions are inappropriate because it researched the issues, obtained opinions from independent counsel, and evaluated the propriety of filing the action. Accepting these representations as true, the imposition of sanctions is nevertheless justified in this case. This Court is convinced that this is a wholly meritless action brought by the Club in an attempt to avoid the practical effect of its decision to settle with Finkelstein's clients in the prior litigation. This Court is not the proper forum to challenge the conduct of attorney Finkelstein. As was more fully discussed above, if plaintiff questioned the actions of Finkelstein, it should have directly sought rescission of the settlement agreement in Superior Court or have instituted proceedings against Finkelstein with the District of Columbia Bar. More importantly, there is no reason at all why plaintiff simply could not have rejected Finkelstein's demands and have proceeded with its Superior Court litigation.

This present action is nothing more than an attempt to seek retribution for what plaintiff perceived to be Finkelstein's overreaching. Filing of this complaint has put the defendant to the needless expense of defending plaintiff's meritless claims. Accordingly, this is an appropriate case for the imposition of Rule 11 sanctions. Upon defendant's filing of an itemized accounting of the costs and legal fees that have been incurred, reasonable attorney's fees and costs will be assessed against plaintiff and its counsel.[4]

### ORDER

Upon consideration of defendant's motion to dismiss, or in the alternative, for summary judgment, the plaintiff's motion for partial summary judgment on its claim for slander of title, and defendant's motion for Rule 11 sanctions, any opposition thereto, and after hearing the arguments of counsel, it is this 18 day of May 1990, hereby

ORDERED that defendant's motion to dismiss, or in the alternative for summary judgment is GRANTED as to Counts I, II, and III of plaintiff's complaint; and it is

FURTHER ORDERED that plaintiff's motion for partial summary judgment is DENIED; and it is

FURTHER ORDERED that defendant's motion for Rule 11 sanctions is GRANTED; and it is

FURTHER ORDERED that defendant file a statement with the Court that itemizes the costs and attorney's fees incurred in defense of this action.

SO ORDERED.

---

**4.** With respect to plaintiff's assertion that advice was obtained from consulting attorneys prior to initiating this action, plaintiff may well deem it appropriate to seek contribution from them.