Frances Cress **WELSING,
M.D.,** Plaintiff,

v.

**GOVERNMENT OF the DISTRICT OF COLUMBIA, Robert A. Washington, Betty King, Janice Hutchinson, M.D., Robert Stasko, M.D., Clover Arthur–Ellis, M.D., Mareasa Issacs,** and **Nancy Ware,** Defendants.

**Civ. A. No. 91–2991.**

United States District Court,
District of Columbia.

Feb. 25, 1992.

Robert L. Bell, Washington, D.C., for plaintiff.

Sheila Kaplanver, Asst. Corp. Counsel, District of Columbia, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This action comes before the Court on the Defendants' motion for Summary Judgment. *See* Fed.R.Civ.P. 56(c). Plaintiff Frances Welsing was formerly a psychiatrist employed by the District of Columbia's Commission on Mental Health Services ("CMHS") at the Paul Robeson School. Defendants are the District of Columbia and seven officers of the CMHS. Plaintiff alleges that the Defendants discriminated against her on the basis of her political views, race, gender, age, and handicap. She brings this action claiming Defendants deprived her of her rights under 42 U.S.C.

§§ 1983, 1985, and 1986 and the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. § 621, *et seq.* Because there are no issues of material fact and Defendants are entitled to judgment as a matter of law, the Defendants' motion for Summary Judgment will be granted and this case will be dismissed with prejudice.

## BACKGROUND

In deciding a motion for summary judgment a district court must view the available evidence in a light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Therefore, for the purposes of this motion, the Court will accept the following facts.

Plaintiff is an African–American woman who worked as a psychiatrist for the District of Columbia from 1968 until 1991. During that period Plaintiff was employed at the Paul Robeson School. Her primary duties were the treatment and care of children at Robeson and the supervision of more junior members of the psychiatric staff there. Eventually, she assumed the informal rank of "Clinical Director." In the 1970's Plaintiff began actively advocating for the rights of African–Americans, both as staff members and patients at the Paul Robeson School. Prior to 1987 Plaintiff received excellent performance ratings. During that time the Robeson School was under the auspices of the Mental Health Services Administration ("MHSA"). Plaintiff's supervisor during that time was Program Manager Paul Worthy.

In 1987, the MHSA and the federally funded Saint Elizabeth's Hospital were merged, and Robeson became part of the CMHS' division of the Child and Youth Services Administration ("CYSA"). Shortly thereafter, Mr. Worthy was transferred to Saint Elizabeth's, and Defendant Nancy Ware replaced him as Program Manager at Robeson. Plaintiff's working relationship with Ware was not as good as her relationship with Worthy had been. *See* Plaintiff's Affidavit at ¶ 9. There was conflict between them as to their respective supervisory authority. *Id.* In addition, in 1988

there was an accreditation review of Robeson. After that review, the CYSA sent Plaintiff a memorandum describing her job performance as "inefficient, inexcusably neglectful of duty, and insubordinate." Defendants' Exhibit B at 1. In specific, the memorandum criticized Plaintiff's low caseload and her poor record keeping concerning psychiatric treatment. Plaintiff's situation at work continued to deteriorate as her previously diagnosed cancer forced her to take substantial sick leave. On February 13, 1990, Plaintiff received a memorandum from Ware informing her that within the CYSA programs, the position of "Clinical Director" did not exist and that "Overall direction" at Robeson was Ware's responsibility as Program Manager. *See* Affidavit of Beatrice Smith at ¶ 4; Exhibit 2 to Smith Affidavit.

On February 21, 1990 Plaintiff filed a union grievance alleging "ongoing and escalating harassment" since 1987. The gravamen of that complaint was the same alleged harassment as forms the basis of this case. Plaintiff demanded "restoration" to her position as "Clinical Director," return of all sick leave, and "other compensation." Defendants' Exhibit A. Contemporaneously, Plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging discrimination on the basis of race, color, gender, and age.[1] She continued working at Robeson for the next year.

On March 29, 1991, however, Plaintiff appeared at the CMHS personnel office requesting early retirement pursuant to the Special Option Voluntary Retirement Authorization program (the "Early Out" program). Early Out retirement was a limited program which was available to limited District of Columbia employees only until March 31, 1991, two days after Plaintiff appeared at the personnel office.

Plaintiff, because of her position as a medical officer, was not eligible for Early Out retirement. The Personnel Department advised Plaintiff of this fact, but Plaintiff determined that she wished to pursue a negotiated option which would avail her of the right to early retirement. To that end, Plaintiff entered into a settlement of her labor grievance charging harassment by the Defendants in this suit. Plaintiff agreed to withdraw her claim in return for an immediate reassignment to the position of Health Systems Specialist. *See* Affidavit of Frankie T. Wheeler at ¶ 2; Exhibit 2 to Affidavit of Frankie T. Wheeler. That position carried with it eligibility for the Early Out benefits Plaintiff desired. Pursuant to the settlement, Dr. Welsing's request for early retirement benefits was processed on March 29, 1991, two days before the program expired. *Id.* Plaintiff's EEO complaint was dismissed for failure to provide adequate information to the EEOC. The District subsequently provided Plaintiff with early retirement benefits. Ignoring her settlement, Plaintiff brought this action in federal court alleging discrimination and harassment over the same period covered by her settlement and asking that she be reinstated to her previous position as a medical officer with supervisory duties and be given backpay.

## DISCUSSION

### A. *The Standard for Summary Judgment.*

Summary judgment may be granted to the moving party if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

Fed.R.Civ.P. 56(c). Under *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), summary judgment is appropriate "against a party who fails to make a showing sufficient to establish an element essential to that party's case and on which that party will bear the burden of proof at trial." A party opposing summary judgment may not rest

---

**1.** Plaintiff's original EEO complaint, Filed on March 5, 1990, did not allege age discrimination. On April 25, 1990 Plaintiff amended her complaint to include a claim under the ADEA.

on the mere allegations as stated in the pleadings but rather must set forth specific facts to show that there is evidence sufficient for it to prevail at trial. "If the evidence is merely colorable ... summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986). Because there is no genuine issue concerning any material fact, summary judgment will be granted to the Defendants on all counts.

I start by noting that the case at bar is nothing more than an attempt by Plaintiff to relitigate a case which she has already settled. "A valid agreement of compromise and settlement of a case ... constitutes a merger and a bar of all claims properly litigable in such a case." *Joshi v. Professional Health Services, Inc.,* 606 F.Supp. 302, 308 (D.D.C.1985) (*citing* 47 Am.Jur.2d *Judgments* § 1093 (1964)). In *Joshi* the court held that a Plaintiff could not rely on any of the activities which formed the basis of her prior Title VII claims to make out a prima facie case in a subsequent suit for retaliation. The reason for that bar was that the prior case had settled. Plaintiff Welsing's present complaint is based upon the same facts which form the basis of her prior formal grievance action which was settled. In exchange for dropping her claims the District gave Plaintiff Early Out retirement benefits to which she was not otherwise entitled. That was the bargain. Now, Plaintiff is trying to go back on that bargain by dressing the same factual claims in a revised legal theory. She seeks to do this without repudiating her prior settlement.

Plaintiff continues to receive her early retirement benefits. Counsel for Plaintiff made it clear at argument that Plaintiff was *not* asking and did not wish this Court to disturb the prior settlement into which Plaintiff voluntarily entered. Thus, Plaintiff is attempting to maintain the remedy she received pursuant to her settlement, but to litigate the same issues supposedly addressed by that settlement. As this Court has stated, once a party settles a case, that party cannot seek "both the benefit of that settlement and the additional right to maintain an action that arose out of the same nucleus of operative facts. If such an action were to be permitted, the certainty and finality that accompanies a settlement agreement would always be subject to question." *Conservative Club of Washington v. Finklestein,* 738 F.Supp. 6, 13 (D.D.C.1990). In *Conservative Club* the court dismissed Plaintiffs' claim against an attorney based on the same facts which led to a settlement involving that attorney's client. Just as in the case at bar, the Court there found that allowing the second case, even against a different party, "undercuts the entire purpose of the settlement." *Id.* As this court has clearly stated, "if plaintiff has doubts about the settlement agreement, its remedy is to seek rescission in the [forum] where the action which precipitated the settlement was instituted." *Id.* at 13 n. 3. Plaintiff cannot bring a collateral action in this Court which essentially challenges the terms of that settlement while steadfastly maintaining that the settlement is still binding upon the Defendants.

The incompatibility of Plaintiff's settlement and the new claim is especially apparent when one examines the relief sought in each case. Plaintiff is now asking this Court to reinstate her to the position of medical officer. Complaint at ¶ 79. That relief is utterly inconsistent with the voluntary retirement Plaintiff obtained in her settlement, which Counsel insists that this Court not disturb. Plaintiff can hardly claim, on the one hand, that she was forced to retire from her position as medical officer and as a remedy that she should be reinstated to her former position, while on the other hand, she insists on retaining the benefits of a voluntary, early retirement received as part of a settlement based upon the same facts.

■ Plaintiff's voluntary retirement as part of a consensual settlement precludes her claim here that she was constructively discharged from employment. Plaintiff retired voluntarily in order to receive benefits that were not normally available to people in her position. Such voluntary retirement is inconsistent with a claim of constructive

discharge, unless Plaintiff introduces evidence that she was somehow improperly induced into accepting the settlement. *Cf. Lake v. Baker,* 662 F.Supp. 392, 402 (D.D.C.1987).

■ Reinstating Plaintiff is fundamentally inconsistent with the remedy afforded in her settlement, in which she received benefits based upon a voluntary early retirement which Plaintiff insists this Court not disturb. To allow a subsequent action while still enforcing the terms of the prior settlement would be legally unacceptable. "Our judicial system would be undermined if parties were permitted to initiate an action in one court, settle that action, and then later seek to relitigate the underlying facts in another forum. The Court will not tolerate such 'lying-in-wait' conduct by the plaintiff." *Conservative Club of Washington,* 738 F.Supp. at 14. All Plaintiff's claims must be dismissed for this reason.

■ In addition, Plaintiff's § 1983 claim must be dismissed as against the government officials because it fails to meet the "heightened pleading" standard required for such claims. *See Siegert v. Gilley,* — U.S. —, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Whitacre v. Davey,* 890 F.2d 1168 (D.C.Cir.1989). In order to withstand a motion for summary judgment or a motion to dismiss in a § 1983 action, the Plaintiff must "allege specific direct evidence of illicit intent—as opposed to merely circumstantial evidence of bad intent." *Siegert,* 111 S.Ct. at 1792.

Plaintiff Welsing has simply failed to meet that standard. The complaint merely alleges, and realleges, that the various de-

fendants were in a "conspiracy to harass plaintiff," Amended Complaint at ¶¶ 21, 22, 23, 24, 31, and that "white employees of Defendant Government of the District of Columbia are not harassed." *Id.* at ¶ 27. Plaintiff presents no direct evidence of Defendants' discriminatory intent. The specific acts which constituted this harassment are nowhere to be found in the complaint.[2] Plaintiff only alleges she was demoted.

Plaintiff admits that "at this time, Plaintiff cannot present by affidavit all of the facts essential for a full and fair justification of her opposition to Defendants' current motion for summary judgment," Pl. Memo. at 1. Plaintiff asks that this Court "deny Defendants' current motion without prejudice until after Plaintiff has had an opportunity to complete discovery in this case." *Id.* The Supreme Court, however, has rejected the approach of conducting discovery before ruling on dispositive motions involving claims against individual government officials. *See Siegert,* 111 S.Ct. at 1792–93.[3] Thus, despite Plaintiff's request to conduct discovery, "[when] a plaintiff [has] failed to allege direct evidence of unconstitutional intent, [her] claim must be dismissed immediately." *Whitacre* 890 F.2d at 1171 n. 4.

■ Finally, Plaintiff has failed to present sufficient evidence of her prima facie case under the ADEA to survive Defendants motion for summary judgment. *See Krodel v. Young,* 748 F.2d 701, 706 (D.C.Cir.1984), *cert. denied* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). As discussed above, Plaintiff has not shown that Defendants took any adverse employ-

---

**2.** Plaintiff's §§ 1985, 1986 claims are also dismissed.

Plaintiff has failed to sufficiently allege a "policy" or "practice" on the part of the District to maintain a § 1983 claim against it. *See City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monnell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611.

**3.** While *Siegert* involved an assertion of qualified immunity, that approach is also justified in this case, where Plaintiff's pleadings do not meet the heightened pleading requirement. The very purpose of that heightened pleading requirement is to allow Defendants to assert quali-

fied immunity defenses. Plaintiff claims that she cannot meet such pleading requirements without discovery. In essence, Plaintiff makes the curious argument that she needs discovery before she can submit a complaint which meets the relevant legal requirements. Plaintiff cannot escape *Siegert's* requirement that an official's "immunity from suit" be determined before discovery. *Siegert,* 111 S.Ct. at 1794 (citation omitted). By merely submitting an insufficient complaint plaintiffs could side step *Siegert's* holding at will and deny defendants a sufficient opportunity to assert their immunity defense.

ment action against her. Plaintiff voluntarily retired. Prior to that retirement it is undisputed that her pay and grade were never lowered. In addition, Plaintiff has not sufficiently shown that she was replaced with someone younger than her. Indeed, Defendants have presented uncontroverted evidence that the position formerly occupied by Plaintiff has not been filled. Thus, Plaintiff has not met her burden with respect to the essential elements of her ADEA claim. All Plaintiff's claims are dismissed as being without merit.