**BURGESS v. GROOMS et ux.**

**No. 1062.**

Municipal Court of Appeals
for the District of Columbia.

Argued May 14, 1951.

Decided June 1, 1951.

John U. Gardiner, Washington, D. C., for appellant.

John L. Hamilton, Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Appellant, plaintiff below, sued for the value of electrical fixtures he had installed in defendants' home. He alleged that defendants were building a house under a direct contract with a builder, Allen J. Lloyd; that Lloyd sub-contracted to him the electrical wiring work to be done there; but that defendants directly obligated themselves to pay him for certain fixtures installed in the house.

The trial court ordered judgment for defendants on the grounds that plaintiff had not sustained the burden of proving that he had a direct contract with defendants for the installation of the fixtures and had not sustained the burden of proving that there was an implied promise on the part of the defendants to pay for the fixtures. Plaintiff appeals claiming that the judgment was without evidence to support it, was plainly wrong, and that the trial judge erred in ruling that under the facts in the case the law would not imply a promise to pay.

Testimony for plaintiff was that defendants agreed to pay for the fixtures. This was denied by defendants. They said they had a written contract with Lloyd to build their house for $14,500. They personally

had no sub-contracts in connection with the work except for heat and plumbing, and one $26 wiring job with plaintiff Burgess. Burgess had a contract with Lloyd, the builder, to do the electrical wiring work. When the question of the fixtures arose the Grooms were advised by the builder to consult Burgess about them. After discussing the matter with Burgess, on his advice they went to a local supply house and selected fixtures in the amount of $134.47. The supplier charged them to Burgess upon his verification and they were delivered to the premises and installed by Burgess. The Grooms contended that they never had a contract with Burgess to pay him for the fixtures, believing that he should look to Lloyd. In the plans and specifications it was set out: "Allow $250.00 to purchase the electric fixtures, including necessary light bulbs." The Grooms said they did not spend $250.00, however, because of the further clause which said, "If the net cost to the contractor is less than the allowance made, the contractor shall credit the owner with the difference."

In October 1948 there was about $1000 remaining unpaid on the Grooms' contract with Lloyd, the builder, and at his request they agreed to pay the bills of some of the subcontractors to whom money was still owed, up to the amount of the money still due Lloyd. Among the bills so paid was the bill of Burgess for his wiring subcontract. It was then that Burgess released his mechanic's lien for the electric wiring and fixtures. The Grooms paid certain other of the sub-contractors until they ascertained that there were sub-contractors' bills totaling more than the $1000 due by them to the builder. They denied ever promising to pay Burgess for the fixtures either before or after they were installed. The gist of their testimony was, "That's not our bill; that's Lloyd's."

 Appellant argues that this evidence does not support a finding for de-fendants. He contends among other things that he would not have released his lien if defendants had not offered to pay and that the evidence is ambiguous as to the circumstances surrounding the fixture selection; he points to various parts of the testimony to indicate that defendants were obligated directly for the fixtures. In effect he argues that because of inferences that could be drawn from the evidence the trial court was in error in finding for the defendants. But we are satisfied that despite conflicts in the testimony and different inferences which may be drawn therefrom, the evidence fully supports the decision of the trial court.

There was ample evidence to support the finding that defendants did not obligate themselves by a direct or express contract to pay for the fixtures. Nor was the evidence such as to require a ruling that there had been an implied promise to pay. Contracts implied in fact arise from the facts and circumstances of the case and from the conduct of the parties.[1] It usually resolves itself into a question of fact,[2] at least when the evidence is conflicting. We cannot say that the trial judge was wrong in holding that this plaintiff failed to carry his burden.

 But appellant also argues that there was an implied promise to pay as a matter of law. He bases this argument upon the quasi-contractual theory of unjust enrichment. This theory "is founded on the principle that no one ought unjustly to enrich himself at the expense of another". Hillyard v. Smither & Mayton, D.C.Mun. App., 76 A.2d 166, 167. Admittedly defendants have received a benefit by having the fixtures installed in their house. Speaking loosely, they have been "enriched." But we cannot say as a matter of law that it amounted to an unjust enrichment.

Affirmed.

1. Am.Jur., Contracts, § 4.

2. Williston on Contracts, 3rd Ed., § 36.