**In re ASHBY ENTERPRISES, LTD.**

**No. 84–0343.**

United States District Court,
District of Columbia.

Jan. 28, 1985.

Alan M. Grochal, Melnicove, Kaufman, Weiner & Smouse, Baltimore, Md., Eric F. Stoer, Washington, D.C., for plaintiff/appellant.

Lawrence D. Levien, Betty Leach, Jonathan I. Saperstein, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for appellee Washington Star Co.

Wayne F. Cyron, Miller, Miller, Cyron & Kearney, Arlington, Va., for Management Cost Accounting Consultants, Inc.

MEMORANDUM

HAROLD H. GREENE, District Judge.

This is an appeal from an order of the United States Bankruptcy Court for the District of Columbia, granting summary judgment to the Washington Star, a creditor which was sued by Ashby Enterprises for tortious interference with contractual relations and economic duress. For the reasons stated below, the order will be affirmed and the appeal will be dismissed.

In the fall of 1981, Jack Luskin formed a corporation, Superstores, Inc., to acquire Ashby Enterprises, which was an appliance retailer. At the time the proposed purchase was to be consummated, Ashby was heavily in debt. Under Mr. Luskin's directions, Ashby entered into an out-of-court composition agreement with seven of its largest unsecured creditors. Pursuant to this agreement, Ashby agreed to repay its creditors 75% of their respective debts over a two and one-half year period. Implementation of the composition agreement was contingent upon its acceptance by creditors

whose accounts comprised 75% of Ashby's total debt.[1]

During this same time, the Star was going out of business, and it had hired Management Cost Accounting Consultants, Inc. (MCA), a collection agency, to liquidate a number of its receivable accounts, including that of Ashby.[2] When MCA contacted Ashby concerning payment of its past due account with the Star, Ashby informed it that it had entered into a composition agreement with most of its other unsecured creditors, and it asked MCA to acquiesce in this agreement. MCA refused, demanding to be paid in full. Bernard Silverman who, according to Ashby, represented the Star in its collection efforts,[3] became abusive when Ashby refused to pay. Specifically, Mr. Silverman allegedly (1) sought to settle the Star's $30,000 claim for an amount in excess of that provided under the composition agreement and later suggested that some third party purchase the claim; (2) made several threats to file an involuntary chapter 7 bankruptcy proceeding against Ashby if payment was not forthcoming;[4] and (3) used profanity.

In order to avoid an involuntary bankruptcy petition, which Ashby believed would harm its credit rating and injure the reputation of Luskin's, Inc., Ashby itself commenced a voluntary chapter 11 proceeding. In connection with that proceeding, Ashby filed an action against the Star alleging that Silverman's actions constituted tortious interference with Ashby's contractual relations with other creditors under the composition agreement and actionable economic duress. Ashby sought actual and punitive damages for injury to its credit standing and the reputation of Ashby's officers and directors (persons who were not parties to the complaint), and its legal fees and administrative costs incurred by filing the voluntary chapter 11 petition—costs which Ashby maintains it would not have incurred under the composition agreement.[5]

The Star, in turn, filed a third-party complaint against MCA, which had the Ashby account at the time of the alleged threats, claiming that MCA was liable to it for any damages Ashby might recover against the Star. MCA then impleaded Paul Goodman, its former collection attorney.[6] After Ashby had completed discovery, MCA filed a motion to dismiss Ashby's amended complaint on the ground that the underlying threatening conduct was not actionable. The Bankruptcy Court agreed and in a bench ruling on July 22, 1983, it granted MCA's motion for summary judgment.[7] This appeal followed.

1. Ashby alleges that over two-thirds of its unsecured creditors eventually accepted the voluntary composition agreement.

2. When the Star closed in August of 1981, Ashby's predecessor—George's Radio and Television—owed it over $40,000 for advertising services. The parties negotiated a settlement under which Ashby was to pay $30,000 in four monthly installments beginning in September 1981. The agreement further provided that if Ashby failed to pay any installment, the debt would revert to the original amount. Ashby made the first payment of $8,333 in September, but failed to make any further payments.

3. During the year that Ashby's complaint against the Star was pending, the parties discovered that Bernard Silverman was a fictitious name used for collection purposes by unknown persons. Both the Star and MCA have denied any connection with Mr. Silverman. The Court, however, has assumed for purposes of this appeal that Mr. Silverman was an agent of the Star, MCA, or both.

4. Silverman allegedly made these threats to Ashby's attorney and Vice-President, Charles Tatelbaum and Cary Luskin, respectively.

5. Ashby states that the Bankruptcy Court ultimately affirmed a plan of reorganization, the terms of which are "virtually identical" to those of the composition agreement.

6. The third-party complaint alleged that certain settlement correspondence on the Ashby account dated a few months before the alleged threats were made and signed by Bernard Silverman, appeared on Mr. Goodman's office stationary.

7. Because the parties relied on evidence outside the pleadings, Judge Whelan properly treated MCA's motion to dismiss as one for summary judgment. See *Scanwell Laboratories, Inc. v. Thomas,* 521 F.2d 941, 949 (D.C.Cir.1975).

Ashby challenges the ruling of the Bankruptcy Court that Ashby failed to state a valid cause of action under either of its two theories of liability.

■ First. There is no evidence in the record[8] to support Ashby's claim of tortious interference with contractual relations.[9] Neither the Star nor MCA ever contacted Ashby's other creditors or in any way attempted to deter them from entering into the composition agreement. To be sure, MCA refused to assent to this agreement, and it pressed Ashby to pay its outstanding debt in full even though it knew of the agreement and was told by Ashby that any "under-the-table" payments to nonconsenting creditors would violate its terms. However, it is well settled that a party may lawfully engage in conduct which may interfere with a contract or contractual relations if it "asserts in good faith a legally protected interest of his own or threatens in good faith to protect the interest ... if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Restatement (Second) of Torts § 773.

■ Here, the Star was under no legal obligation to accept the composition agreement, and it was well within its right to demand that its debt be paid in full and to threaten to file a chapter 11 bankruptcy action against Ashby if that payment was not forthcoming.[10] Moreover, Ashby was legally free to pay any non-accepting creditor on terms other than those of the composition agreement—a fact which accepting creditors knew or should have known.[11] Silverman was merely seeking to enforce a prior contract between Ashby and the Star; his attempts to settle the claim[12] and his later threats to resort to legal remedies were not inappropriate means of protecting the rights of the Star. *Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 838–39 n. 12 (D.C.App.1983); *Hunter Vending Co. v. D.C. Vending Co.*, 345

**8.** In reviewing the Bankruptcy Court's order, this Court applies the standard of review traditionally used by appellate courts to review similar district court orders—that is, it will uphold the decision if there was no genuine issue as to any material fact and the court correctly applied the substantive law to the uncontested facts. *Bloomgarden v. Coyer*, 479 F.2d 201, 206 (D.C.Cir.1973).

**9.** The elements of a claim of tortious interference with contractual relations are (1) the existence of a legal contract; (2) defendant's knowledge of that contract; (3) intentional interference without justification; and (4) resulting damages. *Dunn v. Cox*, 163 A.2d 609, 611 (D.C. App.1960).

**10.** The Bankruptcy Code permits three or more creditors with unsecured claims totalling at least $5,000 to file an involuntary bankruptcy proceeding against a debtor. 11 U.S.C. § 303(b)(1). The Act directs the Bankruptcy Court to order relief against the debtor if it determines that the debtor is generally not paying its debts as they become due. 11 U.S.C. § 303(h)(1).

Ashby concedes that it was delinquent in paying its debts, that it owed the Star over $30,000, and that there were more than two other non-accepting creditors who could have joined the Star in filing a petition for involuntary bankruptcy.

**11.** Indeed, paragraph 18 of the composition agreement contemplates the negotiation of independent settlements with non-accepting creditors:

The Creditors Committee and each of its members agrees to use its and their best efforts in full cooperation with the Debtor, to secure acceptance of this Agreement by all, or substantially all, of the unsecured creditors of the Debtor. In the event some unsecured creditors may decline to accept this Agreement and attempt to initiate judicial proceedings, including a petition for involuntary bankruptcy or insolvency, the Creditors Committee further agrees to cooperate with the Debtor to have such action dismissed or such petition denied or an abstention granted, or in the alternative, to cooperate with the Debtor to have this agreement rendered binding on all unsecured credits by and legal means, including the filing of a Chapter 11 Plan of Reorganization. Further, the Creditors Committee and the Debtor shall have the authority to negotiate with unsecured creditors refusing to take the benefit of an assent to the Agreement in order to pay, compromise or otherwise settle the claim of such creditor ....

**12.** The Court notes that Silverman offered to settle the Star's claim for considerably less than the amount actually due—according to Ashby, Silverman suggested that some third party buy the Star's claim for $15,000 and, on a later occasion, for $18,000.

A.2d 142, 144 (D.C.App.1975); *Deoudes v. G.B. Macke Corp.*, 153 A.2d 309, 311 (D.C. App.1959). See generally W. Prosser, *Law of Torts* § 129 p. 931 (4th ed. 1971). See also *Grotrian, Helfferich, Schulz v. Steinway & Sons*, 365 F.Supp. 707, 720 (S.D.N. Y.1973), *modified*, 523 F.2d 1331 (2d Cir. 1975). The Bankruptcy Court's award of summary judgment on this claim was therefore entirely proper and will not be disturbed.

■ Second. Ashby's claim of economic duress is equally without merit. To begin with, economic duress is generally regarded as a contractual defense; it does not constitute an affirmative cause of action under either contract or tort.[13] Even if it be assumed *arguendo* that such a tort exists, the mere threat of an unsecured creditor to file an involuntary chapter 7 proceeding in bankruptcy against a debtor that refuses to pay its debt in full would not constitute actionable conduct, particularly, where, as here, the threats are made to sophisticated businessmen.[14]

■ The basic elements of economic duress are (1) wrongful conduct which (2) overcomes the will of an individual who (3) has no adequate legal remedy or other reasonable course of action to protect his interest. 9 A.L.R. 4th 942. Here, Silverman's threats to file an involuntary petition were made in the course of what could be considered a heated debate between a debtor and a creditor, and were simply to employ a remedy available at law. As such, they were not actionable under the doctrine of economic duress. See *Chouinard v. Chouinard*, 568 F.2d 430, 434 (5th Cir.

1978); *Business Incentives Co. v. Sony Corp. of America*, 397 F.Supp. 63, 69 (S.D. N.Y.1975).

In any event, Ashby had an alternative means to protect its interest other than filing a chapter 11 petition. If the Star had filed an involuntary petition under chapter 11 and the Bankruptcy Court found that it was unfounded, it could dismiss the petition and award Ashby its costs, attorneys' fees, and any damages proximately caused by the taking of possession of its property by the trustee. 11 U.S.C. § 303(i)(1). In addition, if the petition was filed in bad faith, the court could award to the debtor any damages proximately caused by the filing of the petition or punitive damages. 11 U.S.C. § 303(i)(2).[15]

■ Third. Ashby argues that the Bankruptcy Court erred in ruling on MCA's motion some two months before discovery was scheduled to close. However, Ashby concedes that it had completed all its discovery at the time of the Bankruptcy Court's order and that only certain discovery sought by the Star remained outstanding. Even if the additional discovery items Ashby hoped to obtain as a result of the Star's discovery—*i.e.*, the identity of Bernard Silverman and the nature and extent of Ashby's damages—were favorable to Ashby, facts which the Court has construed in favor of Ashby for purposes of this appeal, there still would have been no factual basis to support its substantive claims.[16] As the Star correctly points out, it is the content of the threats and their effect on Ashby, not the identity of the

---

**13.** See Restatement (Second) of Contracts, Introductory Note to paragraphs 174–76 ("Since duress and undue influence are ... not generally of themselves actionable torts, the victim of duress and undue influence is usually limited to avoidance and does not have an affirmative action for damages.")

**14.** Even Ashby distinguishes the cases upon which it relies by stating that "they were attempts to recover damages based upon the mental anguish inflicted upon individuals by aggressive collection techniques, whereas the instant case is a situation in which it is alleged that the aggressive collection activities forced the offi-

cers of a corporation into a business decision that it otherwise would not have made ...." Brief of Appellant at 28–29.

**15.** The alleged abusiveness and use of profanity by Silverman in making these threats did not make them any more actionable.

**16.** The Court notes that information concerning the content of the alleged threats as well as information regarding the issues of causation and damages was readily accessible; indeed, that information was within the exclusive control of Ashby.

perpetrator of the threats that is relevant. The question of damages is likewise irrelevant if defendants' threats are not actionable.[17]

---

**17.** In any event, Ashby failed to apprise the bankruptcy court of its inability to present facts "essential to justify [its] opposition" to MCA's motion and to seek a continuance or a stay of consideration on that basis. Fed.R.Civ.P. Rule 56(f). In light of its failure to pursue the procedural remedy available to it, Ashby may not now object to the scope of discovery permitted. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 954–55 (9th Cir.1978).