**BENNETT ENTERPRISES, INC., Plaintiff,**

v.

**DOMINO'S PIZZA, INC., et al., Defendants.**

**Civ. A. No. 92–1111 (CRR).**

United States District Court, District of Columbia.

July 27, 1992.

Michael J. McManus & Robert C. Cooper of Jackson & Campbell, Washington, D.C., for plaintiffs.

David J. Cynamon and Peter E. Ormsby of Shaw, Pittman, Potts & Trowbridge, Washington, D.C. and Marc P. Seidler and J. Randal Miller of Rudnick & Wolfe, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

On July 24, 1992, the Court held a Hearing on the Defendants' Motion to Dismiss the above-captioned case for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) [1] and for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Upon consideration of the Defendants' Motion, the Plaintiff's opposition thereto, the applicable law and the record herein, the Court shall deny the Defendants' Motion with respect to Counts One and Two of the Complaint and shall grant the Defendant's Motion with respect to Count Three, without prejudice to the Plaintiff's right to amend the Complaint.

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). However, in determining whether Plaintiff has failed to state a claim as a matter of law, the Court must construe the Complaint liberally, affording the Plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979) (quoting *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)).

In Count I, Plaintiff alleges that the Defendants wrongfully terminated the Franchise Agreement. Upon consideration of the parties' claims, the Court must conclude that Plaintiff has stated a cause of action sufficient to withstand a Motion to

---

**1.** Although there are materials appended to the pleadings, such as correspondence between the parties and the Franchise Agreement, this Motion is properly treated as a Motion to Dismiss under FRCP 12(b)(6); the Plaintiffs attached all of these materials to the pleadings, with the exception of the Franchise Agreement, and incorporated all of them into the Complaint. *See*

5A, Charles Alan Wright and Arthur Miller, *Federal Practice & Procedure*, § 1357 at 299 (1990); *Berk v. Ascott Investment Corp.*, 759 F.Supp. 245 (E.D.Pa.1991) (in a 12(b)(6) motion, the Court may consider unauthenticated documents when those documents are incorporated by reference into the Complaint).

Dismiss. Although Defendants advance a plausible reading of the contract, the contract is susceptible to varying interpretations, the correctness of which is most appropriately resolved by the jury. *See Kass v. Wm. Norwitz Co.,* 509 F.Supp. 618, 623–624 (D.D.C.1980) ("an ambiguity in the contract raises a genuine issue of material fact, precluding summary judgment"). First, there exists ambiguity as to whether Plaintiff was in "compliance" with applicable law, as required by Section 15.2 of the Franchise Agreement, at the time Domino's issued a default notice. Plaintiff had entered into repayment agreements with Maryland and the District of Columbia and had been notified by the Federal Government that no action was necessary until the Internal Revenue Service had time to review the case. *See* Complaint at ¶¶ 10–13. Given that the Franchise Agreement does not define "compliance," it is plausible that taking all available steps to remedy a tax deficiency constitutes "compliance" under the Agreement.

For much the same reason, there also exists ambiguity as to what the parties meant by "correcting" or "curing" the violation. Both sides agree that in order to terminate the agreement, Plaintiff had to be notified of the default *and* must have failed to correct it within 30 days of the notification. *See* Def. Reply at 6; Pl. Opp. at 16. However, it is possible that, under the contract, "correcting" the basis for default only required that satisfactory agreements were in place with the authorities to resolve the problem. Thus, even if the alleged tax deficiency were sufficient grounds for a default, the Plaintiff's steps toward reconciling its accounts may suffice to prevent termination under the contract. For these reasons, the Court shall deny the Defendants' Motion to Dismiss the contract claim as a matter of law.

█ In Count II, the Plaintiff alleges that the Defendants intentionally interfered with the prospective economic advantage which would accrue from negotiations with Duignan and Meeks, the two prospective purchasers of the franchise. Contrary to the Defendants' claims, the Plaintiff has stated a cause of action in Count Two of the Complaint. When construed in the light most favorable to the Plaintiff, Plaintiff does allege an expectancy that the price of the franchise would approximate the national office's guideline prices. *See* Complaint at ¶ 15, 18, 19. Plaintiff also alleges that the Defendants acted with the intent to disrupt Plaintiff's efforts to sell the store for an advantageous price. *See* Complaint at ¶¶ 21, 34–41. Accordingly, the Court shall allow Plaintiff to proceed with the claims advanced in Count II of the Complaint and shall deny Defendants' Motion to Dismiss.

█ In Count III, Plaintiff alleges that Domino's "fraudulently induced and coerced Bennett to offer to sell, and to consummate a sale of, the valuable Domino's Pizza franchise for far less than the actual value." Complaint at ¶ 43. Specifically, Plaintiff alleges that Domino's misrepresented that Plaintiff was in default under the Franchise Agreement and that the Bennett franchise was a distressed store. Complaint at ¶¶ 44–45. According to the Plaintiff claims that the Defendants' alleged false representations "were intended to, and did in fact, cause Bennett to believe, wrongly, falsely and contrary to the terms of its franchise agreement, that it was in default of the agreement and was obliged to sell its franchise at a price fixed by the 'distressed store' formula." Complaint at ¶ 50. Defendants argue that the representations as to the value of the store and as to the effect of the distressed store designation cannot be misrepresentations of fact. Moreover, Defendants argue that Plaintiff had no reasonable basis upon which to rely on such representations in making its sales decisions. Defendants also move to dismiss the fraud count pursuant to Fed.R.Civ.P. 9(b).

Upon consideration of the claims, the Court shall grant the Defendants' Motion to Dismiss the fraud claim in Count III pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b), without prejudice. In order to plead fraud with the particularity required by Fed.R.Civ.P. 9(b), "the pleader must state the time, place and content of

the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982) (citation omitted). The Complaint must also allege which individual made the misrepresentation. *Id.* at 1385–1386 (Complaint inadequate because it did not allege "which members of the Senator's staff were involved"); *High v. McLean Financial Corp.*, 659 F.Supp. 1561, 1566 (D.D.C.1987); *In re Student Marketing Litigation*, 413 F.Supp. 1156, 1157 (D.D.C.1976).

The Complaint herein does not meet these baseline standards. The Complaint does not allege which employees made the allegedly fraudulent representations regarding the distressed store formula and the default status under the Franchise Agreement. *See* Complaint at ¶ 37 ("DPI employees undermined Bennett's negotiations"); *id.* at ¶ 43 ("DPI's Regional employees fraudulently induced and coerced Bennett"); *id.* at ¶¶ 44–50 (referring only to "DPI's fraudulent and false representations"). Moreover, the Complaint does not allege when these misrepresentations were made. The Complaint also does not allege to whom these fraudulent misrepresentations were communicated. Thus, the Court shall dismiss the fraud claim in Count III, without prejudice, pursuant to Fed.R.Civ.P. 9(b).

■ Even assuming, *arguendo*, that the Plaintiff's Complaint could survive the Fed.R.Civ.P. 9(b) inquiry, the allegations in Count III of the Complaint, as it presently stands, do not state a cause of action for fraud upon which relief may be granted. First, there is no cause of action for fraud arising from Defendants' statements as to the interpretation of the Franchise Agreement and the interpretation as to the legal effect of the "distressed store" designation. Such representations are legal conclusions and opinions not actionable in fraud. *See, e.g., Perkins v. Nash*, 697 F.Supp. 527 (D.D.C.1988). Secondly, although Defendants' representation that the

Plaintiff's store was "distressed" and experiencing financial difficulties may constitute a factual statement actionable in tort, *see Day v. Avery*, 548 F.2d 1018, 1026 (D.C.Cir.1978), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977), there is no way the *Plaintiff* can logically claim that *it* reasonably relied on what the Defendant said to third parties about the value of the store. In fact, ¶ 17 of the Complaint acknowledges that the buy-out prices were only "guidelines." Moreover, the Franchise Agreement explicitly states that the "buy-out" price was only available to Domino's itself, *see* Franchise Agreement at Section 19.2, and renders implausible the Plaintiff's assumption that this price must govern its negotiation with third-parties. Finally, the Plaintiff's own Complaint also shows that Plaintiff received $600,000 for the store from Duignan, a higher offer than the Defendants' $440,000 valuation. *See* Complaint at ¶ 22. Thus, because the pleadings themselves preclude any claim that Plaintiff reasonably relied on the Defendants' statements, the Court shall dismiss the fraud claim, without prejudice to Plaintiff's leave to amend. *See, e.g., One-O-One Enterprises v. Caruso*, 668 F.Supp. 693, 698–699 (D.D.C.1987), *aff'd*, 848 F.2d 1283 (D.C.Cir.1988) (can grant Motion to Dismiss when pleadings belie any basis for reasonable reliance).

At bottom, the fact that third parties, such as Meeks and Duignan, relied on the Defendants' assessment of the value of Plaintiff's franchise is irrelevant in a fraud action brought by this Plaintiff. Plaintiff's injuries arise from the fact that third parties, namely Meeks and Duignan, relied on the Defendants' assessment of the worth of the franchise and therefore allegedly offered a much lower price than the store was worth. The Plaintiff may seek redress for the harm arising from such alleged misrepresentations to third parties through the tort alleged in Count II, which gives Plaintiff a cause of action for Defendants' interference with prospective economic advantage.

■ The Court shall also grant the Defendants' Motion to Dismiss the duress

claim alleged in Count III. Defendants are correct that, in this jurisdiction, duress is not a cause of action in tort, but is rather a defense to a contract claim. *See In re Ashby Enterprises*, 47 B.R. 394, 398 (D.D.C.1985); *Blake Constr. Co., Inc. v. C.J. Coakley Co., Inc.*, 431 A.2d 569 (D.C. 1981). Accordingly, the Court shall dismiss the duress claim in Count III of the Complaint, with prejudice.

Accordingly, it is, by this Court, this 27th day of July, 1992,

ORDERED that the Defendants' Motion to Dismiss Count I of the Complaint shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the Defendants' Motion to Dismiss Count II of the Complaint shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the Defendants' Motion to Dismiss the fraud claims in Count III of the Complaint shall be, and hereby is, GRANTED, pursuant to Fed. R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b), without prejudice to Plaintiff's ability to seek leave to amend; and it is

FURTHER ORDERED that the Defendants' Motion to Dismiss the duress claims in Count III of the Complaint shall be, and hereby is, GRANTED, with prejudice.