The EQUITY GROUP, LTD., Plaintiff,

v.

PAINEWEBBER INCORPORATED, Defendant.

Civ. A. No. 92–415 SSH.

United States District Court, District of Columbia.

Dec. 14, 1993.

.Barry. Charles Maloney, Maloney & Burch, Washington, DC, for plaintiff. ·

Mahlon M. Frandhauser, Lord, Day, Lord, Barrett & Smith, Washington, DC, for defendant.

### OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is defendant's motion for summary judgment. Also before the Court is defendant's motion to vacate this Court's Order of October 6, 1993, and for reconsideration of plaintiff's motion for leave to amend the complaint. Upon consideration of the entire record, the Court grants defendant's motions.

### Background

Defendant's Private Investments Department originates, develops, and markets private investments for sale within defendant's retail sales system. Between 1989 and 1991, plaintiff provided sales and marketing assistance ("wholesaling" services) for several of defendant's offerings.

The present action concerns a dispute with respect to three of. defendant's private offerings: United Systems Waste, Inc. ("Jacobs Waste . offering"), Painewebber Preferred Yield Fund II, L.P., and Standard Federal Notes.[1]. Plaintiff contends that with respect to these offerings, defendant terminated its alleged oral contract for wholesaling services with plaintiff without notice or cause. Plaintiff further asserts that defendant simultaneously "misappropriated plaintiff's business,

---

**1.** The Standard Federal Notes offering never came to market, and plaintiff appears to have abandoned its claim for breach of contract with respect to this offering.

telemarketing system, sales and marketing data analysis, marketing methods, systems, and client information, and all of Equity Group's sales professionals," in effect, causing plaintiff to go out of business. *See* Compl. at ¶1; Am.Compl. at ¶1. Plaintiff's complaint asserts actions for conversion, breach of contract, and tortious interference with contract. Plaintiff's amended complaint adds three additional causes of action: interference with business relations, promissory estoppel, and agency.

*Motion To Vacate and for Reconsideration*

On September 10, 1993, plaintiff submitted a motion for leave to file an amended complaint out of time. In support of its motion, plaintiff asserted that through discovery, it uncovered additional information about defendant's decisions with respect to plaintiff's termination. It claimed that this new information, in conjunction with other newly-discovered facts, which have not been delineated, gave rise to new claims for interference with business relations, promissory estoppel, and agency.

On September 24, 1993, the Court granted defendant's unopposed motion for an extension of time until October 8, 1993, to oppose plaintiff's motion for leave to file an amended complaint. On October 6, 1993, this Court routinely but mistakenly granted plaintiff's motion for leave to file as unopposed. Accordingly, the Court grants defendant's motion to vacate and reconsiders the motion for leave to file on the merits.

Defendant filed its answer to plaintiff's complaint on February 25, 1992. Therefore, because defendant has not consented to plaintiff's motion, plaintiff may amend its complaint only by leave of court and "leave shall be freely given when justice so requires." *See* Fed.R.Civ.P. 15(a). The Court may deny a motion for leave to amend if the amendment would result in delay or undue prejudice to the opposing party, or if a party had a sufficient opportunity to state the amended claims and failed to do so. *See, e.g., Anderson v. USAir, Inc.,* 818 F.2d 49, 57 (D.C.Cir.1987); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 247 (D.C.Cir.1987). The Court finds that

here, plaintiff had sufficient opportunity to state the amended claims, and unduly delayed in bringing them. Although plaintiff states that it learned additional facts in support of the new claims only after the close of discovery, it waited several additional months until after the filing of defendant's dispositive motion to raise them. Moreover, although plaintiff alleges that it attempts to bring these new claims due to facts learned through discovery, the Court fails to see either how the additional information differs significantly from the facts alleged in support of the original complaint, or how the added claims depend upon the supposed new information. The Court finds that the amended complaint is merely a tactic designed to evade summary judgment, and that to allow amendment at this time would protract the litigation and thus prejudice defendant. Accordingly, the Court denies plaintiff's motion for leave to amend.

*Motion for Summary Judgment*

A court may grant summary judgment when the pleadings and supplemental materials present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court finds that defendant is entitled to summary judgment on each of the counts of the complaint.

*Conversion*

Count I of plaintiff's complaint seeks recovery for defendant's conversion of plaintiff's "business, marketing system, telemarketing 800 telephone number, data base of prospective purchasers of securities and all

of [plaintiff's] sales and marketing professionals...." Compl. at ¶ 30. Defendant contends that this count must be dismissed because plaintiff has failed to state a claim of conversion.

The elements of conversion are "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto." *O'Callaghan v. District of Columbia*, 741 F.Supp. 273, 279 (D.D.C.1990) (citing *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C.1989)); *see also Shea v. Fridley*, 123 A.2d 358, 361 (D.C.1956) (footnote omitted).

Traditionally, intangible property interests have not been subject to conversion. *See, e.g.,* W. Page Keeton, *et al., Prosser and Keeton on the Law of Torts* § 15, at 91 (5th. Ed.1984). Although courts have relaxed this limitation and allowed actions for conversion in cases involving intangibles, "[t]he process of expansion has stopped with the kind of intangible rights which are customarily merged in, or identified with some document." *Id.* at 92. This Court has not found, nor have the parties cited, District of Columbia law that circumscribes the bounds of personal property subject to conversion. Based on the law in other jurisdictions, this Court is persuaded that the District of Columbia would not expand conversion to encompass the appropriation of an intangible such as a business or a marketing system. *See, e.g., H.J., Inc. v. International Tel. & Tel. Corp.*, 867 F.2d 1531, 1547–48 (8th Cir. 1989) (no basis under Minnesota law to expand conversion to protect intangible interest in a business relationship); *Union Sav. Am. Life Ins. Co. v. North Cent. Life Ins. Co.*, 813 F.Supp. 481, 493 (S.D.Miss.1993) (no action for conversion of an insurance business under Alabama, Louisiana, or Minnesota law); *Holmes v. Holmes*, 1991 WL 188668 1991 Conn.Super. LEXIS 2114 (Sept. 13, 1991) (no action for conversion of a partnership interest); *Southern Cellular Telecom. Inc. v. Banks*, 208 Ga.App. 286, 431 S.E.2d 115, 120 (1993) (conversion not available as a cause of action with respect to a minority interest in a business). *But see In re Estate of Corbin,* 391 So.2d 731 (Fla.Dist.Ct.App.1980) (allow-

ing action for conversion of an intangible interest in a business venture). Therefore, the Court finds that plaintiff has failed to state a claim with respect to these items.

Plaintiff also has failed to state a claim of conversion with respect to the items of tangible personal property allegedly misappropriated. Plaintiff concedes that it voluntarily transferred ownership of its database and 800 telemarketing phone number. *See* Pl.'s Opp at 6. Therefore, plaintiff has failed to establish that defendant unlawfully exercised control over this property. *See, e.g., Chase Manhattan Bank v. Burden*, 489 A.2d 494 (D.C.1985). Finally, because persons are not property, plaintiff has not stated a claim for conversion of its sales staff. Accordingly, the Court dismisses Count I in its entirety.

*Breach of Contract*

Count II of plaintiff's complaint alleges that defendant entered into an oral contract with plaintiff in the second quarter of 1991 for three specific offerings. Plaintiff contends that "Painewebber breached its contract with Equity Group when without prior notice, it informed Equity Group that it would not use the services of Equity Group to market the Jacobs offering, the Standard Federal offering, and the Preferred Yield Fund II offering." Compl. at ¶ 35.

Under District of Columbia law, in order for an enforceable contract to exist, there must be agreement both with respect to all material terms and the intention of the parties to be bound. *Redwood Ctr. Ltd. Partnership v. Riggs Nat'l Bank*, 737 F.Supp. 671, 674 (D.D.C.1990) (citations omitted). In the absence of direct evidence of an express contract, a court may imply a contract from the course of the parties' performance, when a reasonable person would view the acts and conduct of the parties as evidencing the existence of a contract. *Richardson v. J.C. Flood Co.*, 190 A.2d 259, 261 (D.C.1963).

Plaintiff has failed to raise a genuine issue of material fact either with respect to whether the parties reached agreement as to

the material terms of the contract or whether the parties intended to be bound contractually. Plaintiff concedes that no express contract existed; the undisputed facts demonstrate that although the parties discussed and attended preliminary meetings with respect to some of the disputed offerings, the parties never reached a formalized, express agreement with respect to material terms such as compensation.

Plaintiff attempts to create a genuine issue of material fact as to the existence of an implied contract, however, by pointing to industry practice and the course of dealing between the parties. Plaintiff argues that previously, each time defendant consulted plaintiff regarding an offering, defendant used plaintiff as the wholesaler. For each of the previous offerings, the agreement was not immediately formalized in writing. In addition, the material terms of the previous contracts between the parties were similar.[2] In effect, plaintiff seeks to imply the existence of a contract based on the mere fact that the parties had a previous course of dealing and subsequently engaged in informal discussions and/or meetings with respect to prospective offerings. Notwithstanding the parties' previous history, a reasonable person would not believe that such discussions manifested an intent to be bound. Thus plaintiff has failed to raise a genuine issue of material fact regarding the existence of a contract. Accordingly, the Court grants summary judgment for defendant on Count II of the complaint.

*Tortious Interference with Contract*

Count III of plaintiff's complaint alleges a claim for tortious interference with contract based on defendant's actions in offering employment to each of plaintiff's six sales and marketing professionals ("wholesalers"). To state a claim for tortious interfer-

ence with contract, plaintiff must show: (1) that a legal contract existed; (2) that defendant had knowledge of the contract; 3) that defendant intentionally interfered with the contract without justification; and (4) that damages resulted from defendant's actions. *Conservative Club of Wash. v. Finkelstein,* 738 F.Supp. 6, 11 (D.D.C.1990) (citing *Dunn v. Cox,* 163 A.2d 609, 611 (D.C.1960); *In re Ashby Enterprises,* 47 B.R. 394, 397 (D.D.C. 1985)). Defendant contends that plaintiff has failed to raise a genuine issue of material fact with respect to whether legal contracts between the six wholesalers and plaintiff existed. The Court agrees.

It is undisputed that the wholesalers did not have specific contracts with plaintiff for the offerings at issue in this case. Plaintiff alleges, however, that because the wholesalers were its employees, defendant interfered with its continuing employment contracts with the wholesalers. The undisputed facts show, however, that the wholesalers were not employees, but rather independent contractors: plaintiff retained and compensated them on a project by project basis; plaintiff did not pay any employment benefits on their behalf; plaintiff submitted 1099 forms, rather than W–2 forms, to the Internal Revenue Service; and plaintiff exercised minimal control over the means and manner by which the individual wholesalers performed their work. *See* Restatement (Second) of Agency § 220(2) (1958).[3] In addition, four of the six wholesalers have submitted affidavits stating that they considered themselves to be independent contractors.[4] As independent contractors, the wholesalers did not have enforceable, continuing contracts with plaintiff. Therefore, plaintiff has failed to raise a genuine issue of material fact as to whether an enforceable, legal contract existed. Accordingly, the Court grants summary

**2.** Plaintiff also asserts, in a conclusory fashion, that this course of dealing is consistent with industry practice.

**3.** Plaintiff asserts that a dispute exists with respect to whether the wholesalers were employees because the wholesalers were under plaintiff's direction, they received compensation and reimbursements directly from plaintiff, they worked on offerings exclusively for defendant, and two of the six wholesalers listed plaintiff on their appli-

cations to transfer their securities licenses. The Court finds that these facts are insufficient to raise a genuine issue of material fact regarding whether the wholesalers were plaintiff's employees.

**4.** Plaintiff also asserts that "the salespeople all considered Equity Group their employer." Pl.'s Opp at 13. This statement is unsupported by the record.

judgment for defendant on Count III of plaintiff's complaint.

### Conclusion

For the foregoing reasons, the Court grants defendant's motion to vacate, and to reconsider, and denies plaintiff's motion for leave to file an amended complaint. The Court also grants defendant's motion for summary judgment. An appropriate Order accompanies this Opinion.