Jon R. GRUNSETH, Plaintiff,

v.

MARRIOTT CORPORATION, d/b/a J.W. Marriott Hotel, Defendant.

Civ. A. No. 93–1101(GK).

United States District Court, District of Columbia.

Jan. 19, 1995.

Craig Ellis, Ellis & Prioleau, Silver Spring, MD, for plaintiff.

J. Michael Jarrard, Jarrard & Richard, Bethesda, MD, for defendant.

### MEMORANDUM–OPINION

KESSLER, District Judge.

## I. *Introduction*

Plaintiff is a former candidate for governor for the state of Minnesota. In his complaint, he alleges that employees of J.W. Marriott inappropriately released to Minnesota reporters a receipt indicating that he had stayed at Defendant's hotel and that such receipt provided corroboration for a story·

about an alleged liaison between himself and Tamara Taylor. Plaintiff also alleges that because of the story being reported, he was forced to withdraw from the governor's race, and was fired from his job. Plaintiff is suing Marriott[1] for breach of contract, negligence and invasion of privacy.

This matter is now before the Court upon Defendant's Motion for Summary Judgment. Upon consideration of the Motion, Plaintiff's Opposition, Defendant's Reply, the entire record herein, and the applicable case law the Court concludes, for the reasons stated below, that Defendant's Motion must be granted.

## II. Statement of Facts[2]

In the fall of 1990, Plaintiff was a candidate for the office of governor of the state of Minnesota. Prior to running for governor, Plaintiff was employed as Vice President of Public Affairs for Ecolab, Inc., a Minneapolis-based environmental sanitation products manufacturer.[3] As a lobbyist for the company, Plaintiff visited Washington, D.C. often and stayed at one of the two downtown Marriott hotels on many occasions. One of those occasions was July 12, 1989.

On October 15, 1990, in the midst of the gubernatorial campaign, a story was published in the Minneapolis *Star & Tribune* entitled "Allegations rock governor's race" which reported that Plaintiff, while nude, had encouraged four teenage girls to remove their bathing suits at a 1981 pool party.

On October 27, 1990, Paul McEnroe and Allen Short, reporters for the *Star & Tribune* conducted an interview with Plaintiff which was videotaped by one of Plaintiff's own campaign workers. During the interview, after being questioned about a long-term affair with Tamara Taylor and about

having spent the night with her at the Washington, D.C. Marriott in July of 1989, Plaintiff admitted having met her at the Marriott hotel, but denied spending the night with her. Mr. Short presented Plaintiff with a document which appeared to be a copy of a hotel receipt to ascertain the exact date he met with Ms. Taylor. Plaintiff simply stated that the Marriott was like a home away from home and that he could not recall when he had met with Ms. Taylor. He did admit having had dinner with her and a friend at the Marriott Hotel during 1988 or 1989, and having had an affair with her in the past.

On October 28, 1990, the *Star & Tribune* published a story, "When did Grunseth [sic] 'wild years' end?", about a nine-year affair between Plaintiff and Tamara Taylor. The article also reported a sexual encounter between Plaintiff and Ms. Taylor that she alleged occurred in July of 1989 at the Marriott on an evening when they were joined by her friend, Minda Callaway, for dinner and drinks. According to the article, the date given by Ms. Taylor was corroborated by Plaintiff's hotel receipt for the night of July 12, 1989.

Immediately after publication of this story, which was released nine days before the general election, Plaintiff withdrew from the governor's race. On the eve of the election, Plaintiff was interviewed in Hawaii by a WCCO–TV reporter. When questioned about the gubernatorial candidates, Plaintiff disparagingly referred to them as Tweedledum and Tweedledee.

At some later date, Plaintiff discovered that a copy of the hotel receipt was missing from his expense report files. Plaintiff reported the missing hotel receipt to William Rosengren, general counsel of Ecolab, in early December, 1990.

---

1. Plaintiff is suing J.W. Marriott and Marriott Corporation which owns and operates J.W. Marriott, but for simplification they will be referred to as "Marriott."

2. Plaintiff, in its Opposition to Defendant's Motion for Summary Judgment, indicated those facts he challenged. Pursuant to Fed.R.Civ.P. 56(e), this Court will treat all facts not explicitly denied or disputed as conceded. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986); *see also* Local Rule 108(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

3. Plaintiff took a formal leave of absence during the latter stages of the campaign.

After the election, Ecolab commissioned a public relations consulting firm, Himle Horner, to conduct a study to see if Plaintiff could rehabilitate his reputation within the Minnesota and Washington, D.C., public affairs/civic communities and continue to effectively perform his duties as a lobbyist. The study concluded that he could not, unless he could disprove the pool party allegations.

Because of the election-eve television interview and the Himle Horner report, Plaintiff was informed by Ecolab in December 1990, that his employment had been terminated. Plaintiff was also informed by Pierson M. Grieve, Ecolab's Chairman of the Board, that another element in the decision to terminate his employment was the *Star & Tribune* article about Tamara Taylor. After Plaintiff was terminated, he asserted claims against Ecolab for wrongful termination, defamation and conversion. Plaintiff and Ecolab ultimately entered into a settlement/severance agreement.

In March 1992, an article, written by David Nimmer, entitled "Drowning Mr. Grunseth", was published in a literary magazine called *The Quill.* The article discussed the two stories published by the *Star & Tribune* about the 1981 pool party and the nine-year affair between Plaintiff and Tamara Taylor. The article said—without any attribution of sources or quotations—that McEnroe had "sweet talked" an employee at the Marriott into sending him a copy of Plaintiff's hotel receipt for the July, 1989 night that Plaintiff allegedly spent with Ms. Taylor. On March 12, 1992, Plaintiff wrote a letter to the Marriott, attaching the Nimmer article, seeking confirmation that Marriott had not disclosed confidential information about his stay at the hotel. On March 30, 1992, Marriott responded assuring Plaintiff that it was their policy not to disclose information in the manner that the article suggested and that they would investigate further.

After an internal investigation, Marriott ultimately determined that its copy of Plaintiff's hotel receipt for July 12, 1989 was purged from its electronic records on May 25, 1990, in accordance with its Accounting Standard Operating Procedure.

On May 13, 1993, Plaintiff filed the present lawsuit claiming that the Defendant disclosed his hotel receipt to the *Star & Tribune* reporter, McEnroe, who then used it as corroboration of Ms. Taylor's charges.

### III. *Defendant's Motion for Summary Judgment Must be Granted*

#### A. Standard of Review

Under Rule 56, Fed.R.Civ.P., summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. Mere allegations or denials of the adverse party's pleading, however, are not enough to prevent issuance of summary judgment. The adverse party's opposition must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine dispute for trial. Fed.R.Civ.P. 56(e): *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Pursuant to this standard, Plaintiff has failed to advance competent evidence supporting the essential elements of his claims and for that reason summary judgment in favor of the Defendant must be granted.

■ · Plaintiff admits that "whether Defendant released Grunseth's hotel bill to the Tribune, via McEnroe, absent Grunseth's written authorization to do so, is central to all his claims" in this case. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant Marriott Corporation's Motion for Summary Judgment ("Plaintiff's Opposition") at 3. Despite the crucial nature of that fact, which is the underpinning of this entire lawsuit, it is clear from this record that Plaintiff cannot offer any evidence to prove that any employee of Defendant re-

leased a copy of Plaintiff's hotel receipt to members of the press. Indeed, Plaintiff's lawyer has conceded as much, stating that: "Grunseth will be completely unable to adduce or examine evidence regarding the issue of the Tribune's alleged procurement of Grunseth's hotel records and receipts reflecting his stay at the J.W. Marriott Hotel in Washington, D.C. on or about July 12, 1989." Affidavit of Jerome S. Rice, Attached to Plaintiff's Opposition, ¶ 4.

### B. Plaintiff's Claim for Breach of an Implied Contract

In his first cause of action, Plaintiff asserts that he entered into an implied contract with Defendant in which Defendant promised not to disclose any information to third parties without the express written consent of Plaintiff. Complaint, ¶¶ 29–30. Under District of Columbia law, in the absence of an express contract, a court may imply a contract from the course of the parties' conduct. *See Equity Group, LTD v. Painewebber, Inc.,* 839 F.Supp. 930, 933 (D.D.C. 1993), citing *Richardson v. J.C. Flood Co.,* 190 A.2d 259, 261 (D.C.1963).[4] While an implied contract arises from the facts and circumstances of the case and from the conduct of the parties,[5] and may also be inferred from the actions of the parties,[6] Plaintiff still retains the burden of proving each of the essential elements of his action for breach of an implied contract.

There is no evidence in this record to prove the existence of such an implied contract. Plaintiff never made nondisclosure of his hotel receipts a condition of his stay at the Marriott hotel. Plaintiff stayed at the Marriott because it was Ecolab's largest cus-

tomer. Deposition of Jon Rieder Grunseth at 50–51 ("Grunseth Deposition").

Plaintiff argues that in the past when he had requested billing information or receipts, he was informed by the Defendant that it was the Defendant's policy to require a written request from the guest prior to furnishing such records. Plaintiff's Opposition at 9. Plaintiff seeks to imply the existence of an implied contract based on the mere fact that the parties had a previous course of dealing. Notwithstanding this history, no reasonable person could find that such practice manifested an intent by either party to be bound or to provide Plaintiff with a contractual right. *See Equity Group,* 839 F.Supp. at 934. The fact that Defendant's legal manual states that information about the registration of guests shall be kept confidential, (*see* Marriott Corporation Legal Manual for Hotel Management, attached as Exhibit 16 of Plaintiff's Opposition), does not establish any agreement between the parties; there is not even a suggestion that Plaintiff was aware of the legal manual or its contents.

There is simply no evidence in the record on which to base a conclusion that Plaintiff and Defendant had a mutual, unwritten agreement[7] that Plaintiff's stay was conditioned on non-disclosure of his hotel receipt. Accordingly, the Court must grant summary judgment for Defendant on Count I of the Complaint.[8]

### C. Plaintiff's Claim for Negligence

In his second cause of action, Plaintiff asserts that Defendant negligently conveyed his hotel receipt to reporter McEnroe. Complaint, ¶ 41. To prove negligence Plaintiff must establish: 1) a duty; 2) breach of

---

4. "(T)he elements of an express and an implied contract are the same. The difference between them is one of proof. The express contract is proven by testimony showing the promise and the acceptance, whereas the implied contract is inferred from the acts of the parties and other circumstances showing an intent to contract." *See Donovan v. United States Postal Service,* 530 F.Supp. 872, 890 (D.D.C.1981) (quoting *Kirk v. U.S.,* 451 F.2d 690, 695 (10th Cir.1971)).

5. *See Burgess v. Grooms,* 81 A.2d 338, 339 (D.C. 1951).

6. *See Richardson, supra.*

7. Plaintiff concedes that "mutuality of agreement" is an essential element of his claim. *See Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 8 ("Plaintiff's Opposition").*

8. Defendant also argues that Plaintiff's loss of employment from Ecolab could not have been a reasonably foreseeable result of Marriott's actions even if an employee had given the hotel receipt to McEnroe. The Court agrees. See the discussion *infra.*

that duty; and 3) injury proximately caused by that breach. *See Williams v. Baker,* 572 A.2d 1062, (D.C.1990). Plaintiff has provided no case law establishing that a hotel has a duty to maintain the confidentiality of a customer's hotel receipt.[9] Nor can the fact that Marriott voluntarily followed its policy of confidentiality create such a duty. *See Gerace v. Liberty Mutual Ins. Co.,* 264 F.Supp. 95, 97 (D.D.C.1966) (one who performs a voluntary act only incurs a legal obligation to perform if the act was undertaken for the benefit of a third person).

◼ Finally, Plaintiff cannot show, even if Defendant's employee did disclose his hotel receipt to reporter McEnroe,[10] that his firing from Ecolab was a natural and probable consequence of Defendant's wrongful conduct which ought to have been foreseen. *See Ceco Corporation v. Coleman,* 441 A.2d 940, 944 (D.C.1982) (quoting *Spar v. Obwoya,* 369 A.2d 173, 178 (D.C.1977). Nothing in the receipt caused publication of the Tamara Taylor story since it corroborated only one thing—namely, the date of Plaintiff's stay at the Marriott Hotel—which he does not deny. Grunseth's Deposition at 233–234. Nor is there evidence that the receipt was the cause of Plaintiff's firing. According to Pierson Grieve, Ecolab's Chairman of the Board, the "two most salient reasons" for Plaintiff's termination was his election-eve television interview and the Himle Horner report. *See* Deposition of Pierson M. Grieve at 22.[11] No reasonable fact-finder could conclude that the loss of Plaintiff's job was a foreseeable and natural and probable consequence of disclosing a hotel receipt which reflected only his

stay at the Marriott on the night of July 12, 1989.

Accordingly, since Plaintiff cannot, as a matter of law, establish any of the essential elements of a claim for negligence, the Court must grant summary judgment for Defendant on Count II of the Complaint.

### D. Plaintiff's Claim for Invasion of Privacy

◼ Plaintiff's third cause of action maintains that Defendant's disclosure of his hotel receipt was a wrongful intrusion into his private life. Complaint, ¶ 47. The tort of invasion of privacy is recognized in the District of Columbia. *See Afro–American Publishing Co. v. Jaffe,* 366 F.2d 649, 653 (D.C.Cir.1966) (en banc). Plaintiff may maintain an invasion of privacy cause of action on any of four theories: 1) intrusion upon one's physical solitude or seclusion; 2) public disclosure of private facts; 3) publicity that places someone in a false light in the public eye; and 4) appropriation of the name or likeness for another's benefit, *See Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580, 586 (D.C.1985). In this case, Plaintiff alleges public disclosure of private facts.

There is a one-year statute of limitations applicable for libel, slander, assault, and other similar intentional torts. *See* D.C.Code § 12–301(4).[12] This limitation has been applied to invasion of privacy claims in the District of Columbia on the rationale that invasion of privacy is essentially a type of defamation. *See Doe v. Southeastern Uni-*

9. As discussed above, Plaintiff has failed to produce any evidence that the Tribune did in fact obtain his hotel receipt from a Marriott employee.

10. Plaintiff in his Deposition admits that a copy of the hotel bill was missing from his expense report file. Deposition of Jon Rieder Grunseth at 163–164. Plaintiff had also sent a note to Bill Rosengren, general counsel for Ecolab, stating that reporter Short had a copy of his July 12, 1989 Marriott Hotel bill submitted on his Ecolab expense report. *See* Defendant's Motion for Summary Judgment, Exhibit N ("Defendant's Motion").

11. Even if Plaintiff is correct that it was the disclosure of his hotel receipt that caused the Tamara Taylor story to be published, that story

was at best only one of the numerous reasons Plaintiff was terminated. *See* Deposition of Pierson M. Grieve at 17–18, 23–24.

12. Specifically the Section provides that:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

(4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment—1 year ...

D.C.Code § 12–301(4).

*versity,* 732 F.Supp. 7, 8 (D.D.C.1990), *appeal dismissed,* 927 F.2d 1257 (D.C.Cir.1991).

The incident about which Plaintiff complains occurred, according to Plaintiff's Complaint, in October of 1990. *See* Complaint, ¶¶ 13–14. Plaintiff filed his Complaint on May 13, 1993, almost three years after the alleged disclosure of his hotel receipt by a hotel employee to the reporter McEnroe. Defendant correctly argues that even if the statute of limitations did not begin to run in October of 1990, it certainly began to run on March 12, 1992, when Plaintiff wrote the Marriott to inquire about whether confidential information had been disclosed. Plaintiff wrote this letter after the article in *The Quill* which reported that Mr. McEnroe had "sweet-talked" a Marriott employee into sending him the hotel receipt. *See* Complaint, ¶ 23. Plaintiff concedes he was aware of the alleged disclosure of his hotel receipt by March, 1992.[13] Consequently, even under this analysis, the statute of limitations expired in March, 1993, approximately two months before the filing of this lawsuit. Therefore, summary judgment must be granted for the Defendant on Count II since it is barred by the statute of limitations.

Plaintiff argues that his claim for invasion of privacy falls within the three year limitations period of D.C.Code § 12–301(8)[14] rather than the one year limitations period of § 12–301(4). Section 12–301(8) only applies to those acts for which a limitation is not otherwise specifically prescribed. Contrary to Plaintiff's contention, invasion of privacy is an action where a limitation is prescribed.

Plaintiff does not argue that this action is anything other than defamatory in nature; therefore, he cannot evade the statute of limitations applicable to such actions.

Furthermore, in order for Plaintiff *to make a successful claim for invasion of privacy based on publication of private facts* he must establish: 1) publicity; 2) absent waiver or privilege; 3) given to private facts; 4) in which the public has no legitimate concern; and 5) which would be highly offensive to a reasonable person of ordinary sensibilities. *See Wolf v. Regardie,* 553 A.2d 1213, 1220 (D.C.1989).[15] Plaintiff must prove all of these elements for a claim of public disclosure of private facts.

Essential elements of that tort are lacking in this case. Plaintiff cannot show that what was allegedly disclosed constituted "private facts," since the hotel receipt contained no such "private facts" about the Plaintiff, and certainly none which would be highly offensive to a reasonable person. The receipt merely contained typical room charges, room service charges and phone charges, and absolutely no information about either Ms. Taylor or that she had stayed with him overnight. *See* Hotel Guest Folio, attached as Exhibit S to Defendant's Motion ("Hotel Guest Folio"). Plaintiff has admitted that the hotel receipt corroborates none of the facts alleged by Ms. Taylor. *See* Grunseth Deposition at pp. 233–234. The only facts the hotel receipt can be said to show are that Plaintiff arrived at the J.W. Marriott on July 12, 1989,[16] departed on July 13, 1989,

---

**13.** Plaintiff states in his Opposition to Defendant's Motion that his Complaint clearly states that he became aware of the actions of the *Star & Tribune* in March, 1992. *See* Plaintiff's Opposition at 20.

**14.** The Section provides that:
Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

    .     .     .     .     .

   (8) for which a limitation no otherwise specially prescribed—3 years.
D.C.Code § 12–301(8).

**15.** The Restatement defines the publication of private facts theory as follows:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
a) would be highly offensive to a reasonable person, and
b) is not of legitimate concern to the public.
Restatement (Second) of Torts, § 652D.

**16.** The only fact made known to the public with regard to the hotel receipt is that Plaintiff stayed at the hotel on the night of July 12, 1989. *See* Article "When did Grunseth 'wild years' end?," attached as Exhibit G to Defendant's Motion.

made three long distance and four local calls (with no indication of to whom), placed a modestly priced order with room service, ordered a movie, and made a purchase from the refreshment center. *See,* Hotel Guest Folio. These hardly constitute facts which would be highly offensive to a reasonable person of ordinary sensibilities.

In short, the Plaintiff has failed to establish, as a matter of law, all essential elements of his claim for invasion of privacy: he has no evidence that the Defendant "published" the information in question [17], and cannot show that the facts set forth in the receipt were "private facts" or that they would be highly offensive to a person of ordinary sensibilities.[18] Therefore, summary judgment must be granted in favor of Defendant on Count III.

### IV. *Conclusion*

This is a case in which a public figure who was forced out of a gubernatorial race because of sensational and damaging news stories about his sex life now sues a hotel where one of the sexual encounters allegedly took place for breach of an implied contract, negligence, and invasion of privacy. The Court has carefully examined all the citations to the record offered by Plaintiff and has concluded that there is not a shred of evidence in that record to support his claim that Defendant was responsible for giving a copy of his hotel receipt to a reporter for the Minneapolis *Star & Tribune*.[19] Proving the existence of this fact is, as Plaintiff has acknowledged, central to his claims. He cannot prove it. For that reason, and those set forth above, the Defendant's Motion for Summary Judgment is **granted.**

---

**17.** See the definition of "publicity" contained in Restatement (Second) of Torts, § 652D, comment a.

**18.** It must also be remembered that Plaintiff was running for governor of the State of Minnesota. It cannot be said, as a matter of law, that the electorate has no legitimate concern about the issues raised in the Tamara Taylor story.

**19.** Indeed, what the evidence does suggest is that someone at Ecolab removed the hotel receipt from Plaintiff's expense account files and provided it to the press.